UNITED STATES of America

v.

Melvin Davis REES, Jr.

Cr. No. 25300.

United States District Court
D. Maryland.

April 12, 1961.

Joseph D. Tydings, U. S. Atty., Robert E. Cahill and H. Russell Smouse, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

William J. O'Donnell and William J. Evans, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

On February 23, 1961, defendant was found guilty on two counts of violating 18 U.S.C.A. § 1201(a) and (b) by a jury which did not recommend the death penalty. Timely motions were made for a judgment of acquittal and for a new trial. In an opinion, reported in D.C., 193 F.Supp. 849, filed at about 5 p. m. on March 22, I stated that these motions would have to be denied, and I directed that the defendant be brought to court for sentencing on March 23. Between 10 p. m. and 11 p. m. on March 22 a program was telecast over WBAL-TV, a

Baltimore station, in which nine of the twelve jurors purported to reenact their deliberations. The program had been "video-taped" on March 12, but neither the court nor any counsel who had participated in the trial knew anything about the proposed program until it was on the air at 10 p. m., March 22. The case is presently before the court on defendant's alternative motions to grant a new trial or a mistrial, or to set aside the verdict, based upon that television program.[1]

The program was introduced by a moderator who occasionally asked questions of the jurors, but the major portion of the program consisted of exchanges between the jurors either reenacting or recollecting their deliberations. Half of the program was devoted to a discussion of the possible death penalty, which eight of the jurors who participated in the program had felt should be imposed. It was stated that the jury had been unanimous in finding the defendant guilty on both counts from the time of the first ballot, and that they had stood nine to three in favor of the death penalty, but had finally agreed to bring in a simple verdict of guilty on both counts.

On March 23 sentencing was deferred so that defendant's counsel might determine whether his rights had been infringed. A few days later they viewed the program at a private showing and obtained a transcript thereof, which they have filed with their motion, and which they and counsel for the government

[1]. Paragraph 8 of the motion reads as follows:

"8. The Defendant, Melvin Davis Rees, Jr., says that his rights as a Defendant in this Court were prejudiced and interfered with in the following particulars:

"(a) That although said video-taped television show undertook to set forth the discussions and arguments by several of the members of the Jury panel concerning the imposition of capital punishment, said program conspicuously avoided the arguments and discussions opposing capital punishment, which said arguments and discussions apparently caused the Jury to reach the conclusion against recommending capital punishment which it made a part of its verdict;

"(b) That at the time of the showing of said video-taped television program, the sentence which the Court might have imposed under the provisions of Title 18, U.S.C., Sec. 1201(a) and (b), under the verdict of the Jury, was unannounced and said video-taped television program, particularly as it concerned the arguments in favor of the imposition of capital punishment, could be construed as tending to influence this Court in the imposition of the sentence which it might have imposed under the aforesaid statute;

"(c) That from the aforegoing transcript of said television program, it appears that some of the jurors who appeared on said video-taped program, in reproducing their deliberations in said Jury room, discussed and considered evidence which was not educed at the trial of the within case;

"(d) That from the aforegoing transcript of said television program, it appears that some of the jurors who appeared on said video-taped program, in reproducing their deliberations in said Jury room, discussed testimony which was admitted into evidence but treated such testimony for purposes for which it would not have been admissible;

"(e) That the broadcast of said video-taped television program through the transmitting facilities of television station WBAL-TV reached the entire geographical area of Anne Arundel County, Maryland, where a warrant is outstanding for the arrest of the Defendant and reached certain geographical portions of the State of Virginia, where the Defendant has been indicted on other charges allegedly arising out of the same evidence presented in this Court in the trial of the within case, and that such television broadcast, as aforesaid, to said areas tended to interfere with and prejudice the rights of the Defendant in the jurisdictions in which he is so charged;

"(f) That the Defendant under the provisions of Rule 37, Federal Rules of Criminal Procedure, has a period of ten (10) days after the imposition of sentence and judgment by this Court to enter an Appeal to the United States Circuit Court of Appeals for the Fourth Circuit; that in the event of said Appeal by him, the within proceedings might be reversed and remanded for a new trial; and that the said video-taped television program tended to interfere with and prejudice the rights of the Defendant in the event of a reversal of the within proceedings and the remanding of his case for said new trial;"

agree is substantially accurate. Defendant has also moved the court to issue subpoenas to all twelve jurors and to the moderator of the television program.

I. Defendant's first contention is that the "arguments in favor of the imposition of capital punishment could be construed as tending to influence this court in the imposition of the sentence".

During the course of a trial, in ruling on objections to evidence and in other ways, a judge necessarily learns of facts which are not admitted in evidence, and is accustomed to disregard matters which should not be considered by him in particular situations. The factors which may be considered by a judge in imposing sentence are not limited to the evidence which might properly be considered by a jury (or a judge without a jury) in determining guilt or innocence. Williams v. People of State of New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337, rehearing denied 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760. But it is not necessary to decide in this case whether and under what circumstances those factors may include the views of the jurors who found the defendant guilty. In the instant case the views of the jurors expressed on the television program have not influenced me and will not influence me in determining what sentence should be imposed. A final decision with respect to the sentence should not be made until the defendant has had the opportunity to speak guaranteed to him by Rule 32(a), F.R.Crim.P. 18 U.S.C.A. Before the telecast, however, I had reached a tentative conclusion with respect to the proper sentence, subject to reconsideration after hearing defendant and his counsel.[2]

II. Defendant's second point is "that some of the jurors who appeared on said video-taped program, in reproducing their deliberations in said Jury room, discussed and considered evidence which was not educed at the trial of the within case" and "that some of the jurors who appeared on said video-taped program, in reproducing their deliberations in said Jury room, discussed testimony which was admitted into evidence but treated such testimony for purposes for which it would not have been admissible".

█ It is a settled rule in the federal courts that jurors will not be heard "for the purpose of impeaching the verdict returned where the facts sought to be shown are such that they essentially inhere in the verdict". Rakes v. United States, 4 Cir., 169 F.2d 739, 745, certiorari denied 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380. "The federal rule has been summarized by Wigmore as making inadmissible jurors' misunderstandings, motives, beliefs and improper remarks and the like. See 8 Wigmore, sec. 2349." Williams v. State, 204 Md. 55, 70, 102 A. 2d 714, 721, opinion by Chief Judge Sobeloff. The Supreme Court has stated the reason for the rule as follows: "Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." McDonald v. Pless, 238 U. S. 264, 267–268, 35 S.Ct. 783, 784, 59 L. Ed. 1300. However, a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. Mattox v. United States, 146 U.S. 140, 149, 13 S.Ct. 50, 36 L.Ed. 917. "It would not

---

2. Having heard the defendant and his counsel and having imposed sentence, I repeat that nothing said on or in connection with the telecast influenced me in determining the sentence.

be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice'." McDonald v. Pless, supra, 238 U.S. at pages 268–269, 35 S.Ct. at page 785.

Neither defendant's motions nor the transcript of the telecast filed therewith show any such extraneous influence as existed in Mattox v. United States, supra, Holmes v. United States, 4 Cir., 284 F.2d 716, or State v. Kociolek, 20 N.J. 92, 118 A.2d 812, 58 A.L.R.2d 545.

■ Applying the principles stated in the cases cited above, I find nothing to warrant a departure from the general rule that the testimony of jurors cannot be used to impeach their verdict. McDonald v. Pless, supra, 238 U.S. at page 269, 35 S.Ct. at page 785. The facts sought to be shown are such that they essentially inhere in the verdict, as that phrase is used in the decided cases.

The motion to issue subpoenas addressed to the jurors will be therefore denied. A fortiori, any statements not under oath made by the jurors to others would be equally inadmissible, and the motion to issue a subpoena addressed to the moderator of the television program will also be denied.

■ III. Defendant's third contention is that the telecast tended to interfere with and prejudice his rights in the States of Virginia and Maryland where he has been indicted on other charges, and tended to interfere with and prejudice his rights in the event of a reversal of the judgment in this case and a remand for a new trial.

This contention, if valid, would not require a new trial, a mistrial, or a striking out of the verdict which has been rendered. Insofar as it might affect a possible future trial in this court, it is premature. Insofar as it might affect a trial in some other court, it is a matter for that court to decide and not for this court.

However, it is desirable that the original tape be preserved. The Hearst Corporation—WBAL-TV Division, which operates the television station and owns the tape, has appeared herein by its attorney, Theodore Sherbow, and has agreed to be bound by an order of this court not to destroy or erase the tape unless and until it is authorized to do so by this court.

I do not intend to intimate any opinion with respect to the propriety and possible collateral consequences of the telecast, in view of the possibility of future proceedings in this court.

I have entered an order denying the motions filed by defendant.