**UNITED STATES of America**

v.

**Melvin Davis REES, Jr.**

**No. 25300 Criminal.**

United States District Court
D. Maryland.

May 2, 1961.

William L. Marbury and William B. Somerville, Baltimore, Md., amici curiae.

THOMSEN, Chief Judge.

By order entered after the time for appeal by Rees had expired, this court appointed William L. Marbury and William B. Somerville, members of the bar of this Court, to make such study as might be necessary and to report to the court their opinion as to whether the acts of The Hearst Corporation—WBAL -TV Division, its agents, servants, employees and representatives and its counsel, in the interviewing of members of the jury panel which returned the verdict in this case and in the preparation and telecast of a television program over WBAL-TV, Channel 11, on March 22, 1961, from 10:00 P.M. to 11:00 P.M., amounted to contempt of court. Messrs. Marbury and Somerville have filed their report and opinion, which is attached hereto as Exhibit A.

The facts are set out in that document. For a fuller discussion of some aspects of the matter, see the second opinion of this court filed herein. 193 F.Supp. 866, 867.

This court accepts the opinion of Messrs. Marbury and Somerville that, in the light of the applicable statute and authorities, this court does not have the power to punish as a contempt the acts of those who were responsible for the television broadcast or those who participated in the program and its preparation.

However, this court is in full agreement with the following statement contained in the report and opinion [193 F.Supp. 861]:

"We think it clear that these broadcasts did interfere with the orderly processes of justice. The fact that the sentencing had to be deferred and that the time of the court had to be employed in disposing of additional motions makes this clear. Moreover, the effect of such a spectacle on the administration of justice is, we think, bound to be unfortunate. While jurors who sit in criminal cases on petit juries are not bound to secrecy, it is certainly true that the interests of justice are better served if what takes place during the deliberations of the jury are not publicly revealed. For many prospective jurors a new burden will be added to jury service if the discussions which take place in the jury room are to be publicized in this sensational fashion. Jurors may well hesitate to express their views freely under such circumstances. Moreover, witnesses called on to give disagreeable or embarrassing testimony may be reluctant to do so voluntarily if they know that their testimony and their credibility may subsequently be discussed by the jurors on a television program."

From many comments made to this court and in the public press, I am satisfied that these views are shared by the Bench and Bar of this State and by the general public. It seems beyond question that such a broadcast is against the public interest and should not be repeated or imitated.

The general supervision of television stations has not been committed by Congress to the courts. However, the courts and the bar associations share the responsibility of seeing that lawyers comply with the standards of professional ethics. This court, therefore, refers the matter to the President of the Maryland State Bar Association for consideration by its Grievance Committee of the question whether disciplinary proceedings should be instituted against counsel for the television station. The court also requests the President of the Maryland State Bar Association to appoint a committee, representing the entire Bench

and Bar of this State and District, to consider whether the adoption of any legislation or rule of court is necessary or desirable.

I am authorized by Judge CHESNUT and Judge WATKINS to say that they concur in this opinion and action.

Exhibit A

April 26, 1961

Hon. Roszel C. Thomsen, Chief Judge
United States District Court
U. S. Post Office & Court House Building
Baltimore 2, Maryland

Dear Judge Thomsen:

You have asked us to advise you, as friends of the court, whether you have the power to treat as a contempt of court the television broadcast presented over Station WBAL-TV on Wednesday, March 22, 1961. This broadcast purported to be a re-enactment by certain members of the jury who sat in the case of United States v. Melvin Davis Rees, Jr., of their deliberations in the jury room.

The verdict of the jury in the Rees case was recorded on February 23, 1961. Under the applicable statute the jury had the power to recommend capital punishment for the offenses of which Rees was found guilty, but the verdict contained no such recommendation. Counsel for Rees filed a motion for a new trial, which was overruled after hearing, and Rees was then ordered to appear for sentencing on March 23, 1961.

On March 12th a video tape was recorded in the studios of WBAL-TV in the presence of counsel for the station. Nine members of the jury who had returned the verdict in the case were asked to re-enact what had taken place in the jury room during the consideration by the jury of their verdict. This tape was broadcast by Station WBAL-TV over Channel 11 during the evening hours of March 22nd, and we are informed by the United States Attorney that this was done on the advice of counsel for the station, who accepts full responsibility for the program.

The broadcast was preceded by a statement by the station manager that the television audience was about to see and to hear "something that had never before been seen or heard in public." The announcer stated that "You will sit with the men of a federal jury as they deliberate the fate of a defendant accused of kidnapping and murder. You will see and hear what actually goes on behind the guarded doors of the jury room as these men turn over in their minds each bit of evidence to determine whether another human being shall be set free or spend the rest of his life in a federal penitentiary, whether another human being shall live or die." Nine members of the jury, including the foreman, then proceeded, for the space of approximately one hour, to discuss the case, comment on the evidence and to express their opinions as to the guilt or innocence of the accused and as to whether or not he should receive the death penalty.

This broadcast was made without any advance information to or consultation with the court or counsel who participated in the case. It received wide attention throughout the community. On the following morning counsel for Rees asked that sentence be deferred in order to give them an opportunity to make additional motions on his behalf. Thereafter motions were filed to set aside the conviction on the ground that the broadcast might influence the court in imposing sentence, and that it had prejudiced a possible retrial of the accused in the event an appeal were successful, had prejudiced the accused's opportunity for a fair trial under related indictments now pending in the states of Maryland and Virginia, and had demonstrated that the jury in its consideration had given weight to matters not admitted in evidence and had given improper weight to evidence admitted for limited purposes. These motions were argued and, after consideration, were overruled. The trial court then proceeded to sentence Rees to life imprisonmnt.

We think it clear that these broadcasts did interfere with the orderly

processes of justice. The fact that the sentencing had to be deferred and that the time of the court had to be employed in disposing of additional motions makes this clear. Moreover, the effect of such a spectacle on the administration of justice is, we think, bound to be unfortunate. While jurors who sit in criminal cases on petit juries are not bound to secrecy, it is certainly true that the interests of justice are better served if what takes place during the deliberations of the jury are not publicly revealed. For many prospective jurors a new burden will be added to jury service if the discussions which take place in the jury room are to be publicized in this sensational fashion. Jurors may well hesitate to express their views freely under such circumstances. Moreover, witnesses called on to give disagreeable or embarrassing testimony may be reluctant to do so voluntarily if they know that their testimony and their credibility may subsequently be discussed by the jurors on a television program.

Nonetheless, we are constrained to advise you that the provisions of Title 18, U.S.C.A., Section 401, as they have been authoritatively construed by the Supreme Court of the United States prohibit you from invoking the power of the court to punish for contempt in order to bring to account those who participated in this broadcast. Since the decision of the Supreme Court in Nye v. U. S., 313 U.S. 33 (1941), the federal courts have consistently held that they have no authority to deal as a contempt of court with actions which take place outside the courtroom or its immediate geographical vicinity. In the Nye case Mr. Justice Douglas construed the Act of March 2, 1831 (now Title 18 U.S.C.A., Section 401(1)) as limiting the power to punish for contempts to cases where the orderly conduct of the trial was affected by acts done in the presence of the court or so physically near to the court as to disturb order and decorum in the courtroom. Acts not falling within this narrow area cannot be dealt with as contempts even though they may obstruct justice.

Since 1941 there have been a series of cases in the lower federal courts in which the doctrine of the Nye case has been applied. Illustrative of these are Farese v. U. S., 209 F.2d 312 (C.A.1, 1954); Calvaresi v. U. S., 216 F.2d 891 (C.A.10, 1954); Warring v. Colpoys, 122 F.2d 642 (C.A.D.C., 1941) at p. 644; Wimberly v. U. S., 119 F.2d 713 (C.C.A.5, 1941); Schmidt v. U. S., 124 F.2d 177 (C.C.A. 6, 1941); Millinocket Theatre v. Kurson, 39 F.Supp. 979 (D.Me.1941).

Cammer v. U. S., 350 U.S. 399 (1952) is a very recent indication that the Supreme Court has no intention of modifying its strict interpretation of the statute. That was a case in which a member of the bar had mailed questionnaires to all members of the Grand Jury who were employees of the federal government, with a view to learning whether those jurors might have been influenced by bias or fear to indict his client, who had been charged with filing a false non-Communist affidavit. The District Court, while conceding that the attorney could not be punished under Section 401 (1) for "misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice," had concluded that he might be punished under Subsection (2) of Section 401 for "misbehavior of any of its officers in their official transactions" and had found him guilty of contempt and fined him $100. The Court of Appeals affirmed, but the Supreme Court granted certiorari and reversed, holding that for the purposes of this statute a member of the bar was not an officer of the court. We think that this case also makes it clear that the conduct of counsel for Station WBAL-TV who approved the broadcast cannot be dealt with as a contempt of court.

Our conclusion, therefore, is that no useful purpose could be served by citing any of the participants in this broadcast to show cause why they should not be held in contempt of court, since the court

clearly lacks the power to punish their acts as a contempt.

Yours respectfully,
William B. Somerville
William L. Marbury

WLM:la