Elizabeth Kelly, Individually and as Administratrix of the Estate of Arthur Kelly, Deceased, Respondent, v M. C. Electric Co., Inc., Appellant and Third-Party Plaintiff-Appellant, et al., Defendant, and City of New York, Appellant. Contractor Sheet Metal Company, Inc., Third-Party Defendant-Respondent; Ronel-Systems, Inc., Third-Party Defendant.

First Department, June 28, 1979

## APPEARANCES OF COUNSEL

*Philip Schlau* of counsel *(Steven Miller* with him on the briefs; *Newman & Schlau, P. C.,* attorneys), for M. C. Electric Co., Inc., appellant.

*Bernard Burstein* of counsel *(L. Kevin Sheridan* with him on the briefs; *Allen G. Schwartz, Corporation Counsel,* attorney), for City of New York, appellant.

*Leonard A. Sheft* for New Again Construction, Inc., respondent.

*William F. Larkin* of counsel *(Peter Pryor,* attorney), for third-party defendant-respondent.

*Edwin N. Weidman* of counsel *(Norman E. Frowley* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for Elizabeth Kelly, respondent.

## OPINION OF THE COURT

Kupferman, J. P.

In the course of the construction of the Kips Bay Branch Library in 1970, Arthur Kelly, a sheet metal worker, an employee of Contractor Sheet Metal Company, Inc. (Contractor), was electrocuted while holding a hand electric power drill.

The City of New York was the owner of and general contractor for the project and had entered into several prime contracts, including one with defendant M. C. Electric Co., Inc. (Electric), to install both a temporary and a permanent electric system. They appeal from a judgment against them. Claims by the plaintiff administratrix against other prime

contractors sued were either dismissed at the close of the plaintiff's case or resolved in the defendants' favor by the jury.

Electric impleaded the decedent's employer, Contractor, and the City of New York, also a defendant, and its pleadings are deemed amended to assert a claim over against the employer. The city, as the general contractor, had maintained a resident engineer, an employee of the Department of Public Works, on the premises to oversee compliance by the contractors with the jobs' specifications. Contractor's foreman on the job was a relative of the decedent. The decedent, together with another sheet metal worker, went into a crawl space beneath the first floor of the structure, where a heating and air-conditioning duct was being installed. There was evidence of water on the ground in the deep end of the crawl space. Boards had been placed on the wet ground, but there is no dispute that the area was damp and moist. Lighting in the crawl space was provided by an electric line from which several wires ("pigtails") hung, and each held a light bulb to illuminate the area. The electric line carrying the power for the lighting was not grounded. To accommodate the use of power tools, Contractor converted this temporary lighting system by screwing an adapter into the receptacle (which normally would hold a light bulb) to affix an extension cord for power tools. The decedent then used a pistol drill which, although equipped with a three-wire system, had the pin for the ground connection removed. Of course, in using the wires for the electric bulb which provided no grounding, it mattered not that the grounding pin had been removed. The evidence shows that the decedent was perspiring during the course of his work, and perspiration being essentially salt water, is an excellent conductor. Apparently, the presence of the salt water found within the drill could cause a short circuit, and the electric current could travel through the metal screws, and when the decedent's wet hands touched the screws, he received a heavy flow of electric current through his body and into his other hand, which was probably holding the metal angle iron through which he was drilling.

As the jury found in answers to interrogatories for special verdicts, there was substantial negligence attributable to Electric, Contractor (the employer) and its foreman (who had complained of the absence of the grounding system but nevertheless allowed the decedent to proceed with the work) and to

the city whose negligence was based on improper supervision and failure to provide a safe place to work.

The trial court held that the negligence of the city defeated its claim for common-law indemnity and also under the contractual provisions.

The jury found in favor of the plaintiff against the city, Electric and the employer, Contractor, each of whom was found to have been negligent, but surprisingly, apportioned the award 35% against Electric, 65% against the city, but zero against the employer.

■ The jury had awarded $500,000 for wrongful death, and $50,000 for conscious pain and suffering. On motion, the awards were to be set aside as excessive and a new trial ordered, unless the plaintiff stipulated to accept $300,000 for wrongful death and $15,000 for conscious pain and suffering. The plaintiff stipulated to accept the reduced sums. However, she does, and may, argue for reinstatement of the verdict on the appeal by the city and Electric. (See *Rumph v Gotham Ford,* 44 AD2d 792; CPLR 5501, subd [a], par 5.) Nonetheless, we affirm as to the lesser amounts stipulated by plaintiff as acceptable.

The city claim over for indemnification against Electric under the contract was disallowed, although the jury made a special finding that Electric had failed in its contractual undertaking, had been guilty of common-law negligence, and had also been in violation of the Industrial Code.

The jury had to determine apportionment, following the liability verdict. The jury had already found that, while all three parties were negligent, Contractor, the employer, was not liable to Electric or to the city. The court directed that the jury determine in percentages in what proportion Electric and the city were liable to the plaintiff, and then in what proportion such liability of each was attributable or apportionable to Contractor. As a result, the jury then found 35% for Electric, 65% for the city, and zero for Contractor.

■ ■ We believe that the appropriate apportionment should have been 35% for Electric, 32½% for the city, and 32½% for Contractor. *(Dole v Dow Chem. Co.,* 30 NY2d 143; *Kelly v Long Is. Light. Co.,* 31 NY2d 25.) The determination of zero percentage to Contractor was against the weight of the evidence and inconsistent with the jury's answer to the interrogatories. (CPLR 1402.) With respect to the city's right against Electric for indemnification under the hold harmless clause in

their agreement, the language of the agreement is clear. *(Levine v Shell Oil Co.,* 28 NY2d 205; see *Martin v Maintenance Co.,* 588 F2d 355, 359.) Accordingly, there is a complete shifting of that loss to Electric. *(Riviello v Waldron,* 47 NY2d 297.)

The judgment should be modified, on the law and the facts, without costs, to direct that Electric indemnify the city against all liability, and further, to direct a new trial as to apportionment only, without costs or disbursements, among Electric, the city, and Contractor, unless Contractor, within 20 days after service upon it of a copy of the order herein, with notice of entry, serves and files in the office of the clerk of the trial court a written stipulation consenting to payment of 32½% of the judgment herein, in which event the judgment as so modified, is affirmed, without costs or disbursements.

BIRNS, SANDLER, MARKEWICH and SILVERMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 29, 1977, modified, on the law and the facts, without costs and without disbursements, to direct that M. C. Electric Co., Inc., indemnify the City of New York against all liability, and further, to direct a new trial as to apportionment only, without costs or disbursements, among Electric, the city and Contractor, unless Contractor, within 20 days after service upon it of a copy of this court's order, with notice of entry, serves and files in the office of the clerk of the trial court a written stipulation consenting to payment of 32½% of the judgment herein, in which event the judgment as so modified, is affirmed, without costs and without disbursements.