Luz M. RODRIGUEZ, Individually and as Mother and Natural Guardian of ALBERTO MIRANDA, an Infant, Appellants-Respondents, v GEORGE P. BAKER et al., as Trustees of the Penn Central Transportation Company, et al., Respondents-Appellants.

First Department, January 13, 1983

APPEARANCES OF COUNSEL

*Thomas V. McMahon* of counsel (*Andral N. Bratton* with him on the brief; *Conboy, Hewitt, O'Brien & Boardman,* attorneys), for Trustees of Penn Central Transportation Company, respondents-appellants.

*Pamela Seider Dolgow* of counsel (*Ronald E. Sternberg* with her on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for City of New York, respondent-appellant.

*Steven B. Prystowsky* of counsel (*Barry W. Horowitz* with him on the brief; *Lester Schwab Katz & Dwyer,* attorneys), for Poirer & McLane Corporation and another, respondents-appellants.

*Robert M. Ginsberg* for appellants-respondents.

OPINION OF THE COURT

FEIN, J.

The 13-year-old plaintiff, playing near the railroad tracks on a summer evening in 1971 in the vicinity of Riverside Park in Manhattan, was grievously injured when he fell onto the tracks and was struck by a Penn Central train, losing both his legs. The jury awarded him damages of $600,000 apportioned 50% against the City of New York, 40% against Penn Central and 10% against joint venturers Poirer & McLane Corporation and Raymond DiMenna Corporation, who were under contract with the city for sewer construction in the area. His plaintiff mother was awarded compensation for medical expenses, notwithstanding a jury verdict to the contrary.

The infant plaintiff appeals from the judgment as inadequate. He and his plaintiff mother appeal from denial of their motion to set aside the verdict as inadequate. Penn Central and the contractors appeal from the judgment. The city cross-appeals from denial of judgment over against the contractors.

■ We are well aware that no amount of money can truly compensate this child for loss of his legs. However, we have concluded that there is no basis for disturbing the verdict in favor of the infant plaintiff. Although a larger verdict might have been appropriate, the amount awarded is not so inadequate as to require that it be set aside. The evidence clearly established liability on the part of defendants. Further, it was foreseeable that the proximity of the tracks to Riverside Park, which was in effect converted into a construction site during 1969 through 1971, would entice children at play (*Scurti v City of New York,* 40 NY2d 433, 441-442).

Riverside Park is a long, narrow strip running north and south between Riverside Drive and the Hudson River, along the western edge of northern Manhattan. The Penn Central railroad tracks run through the park from about 123rd Street north. Near 139th Street, the vicinity of the accident, the public use area of the park, consisting of a grassy area with benches and an asphalt pedestrian walkway, is separated from the track area by a three-foot-high wrought iron picket fence. West of the fence, an embankment slopes downward 40 to 60 feet, at an angle of about 45 degrees, to a seven and one-half foot stone retaining wall abutting the railroad bed, some 10 and one-half feet from the northbound track. Construction, primarily underground but involving the exposure of heavy equipment above ground, was taking place in the embankment area. Installation of a pipe system required removal of a portion of the wrought iron fence. Five-foot-high wooden barricades were supposed to be erected along the perimeter where the fence was removed. However, photographs in evidence show no such barricades. There was testimony that there had been a chain link fence atop the retaining wall which had disappeared by the date of the accident.

The infant plaintiff testified that on this particular occasion he and his friends had climbed over the wrought iron fence to play tag in the area. Other parts of his testimony indicate that he descended to the embankment through a passage where there was no fence, describing this passage as being "next to the flower pots". As he ascended the embankment at the conclusion of the game, the child said

he heard a train approaching, and when he turned around he saw a neighborhood dog on or near the retaining wall. It was during his descent to retrieve the dog that, according to his testimony, he slipped and fell from the retaining wall onto the tracks.

The evidence was sufficient to support a jury finding that the maintenance of inadequate fencing and barricades under these circumstances constituted negligence (*Scurti v City of New York, supra*).

■ The city's right to indemnification against the contractors is explicitly set forth in their contract. Article 7 of the agreement between the city and the contractors provides that the latter are solely responsible for taking all precautions to protect anyone on or adjacent to the work site from injury resulting from operations under the contract, including "the duty to provide, place and adequately maintain at or about the site suitable and sufficient guards, lights, barricades and enclosures." Should an injury result on or about the site due to the contractors' negligence, carelessness or failure to comply with the contract or with law, the contractors "shall indemnify and hold the City harmless from any and all claims and judgments for damages and from costs and expenses to which the City may be subjected or which it may suffer or incur by reason thereof." Such indemnification clauses are valid among parties to a construction contract (*Vey v Port Auth. of N. Y. & N. J.*, 54 NY2d 221), even where, as here, substantial responsibility for the injury was found on the part of the municipal indemnitee (*Kelly v M. C. Elec. Co.*, 68 AD2d 657).

Plaintiffs' appeal on the issue of inadequacy of the verdict is based in part on an alleged mistake by one of the jurors. The verdict on liability against the city and the railroad was unanimous, and against the contractors 5 to 1, with juror number 5 dissenting. The award of damages for the infant plaintiff was by a 5 to 1 vote, with juror number 2 dissenting. On the question of apportionment of damages among the defendants, the jury was unanimous, 40% against the railroad, 50% against the city and 10% against the contractors. The jury was then held over pending further motions and interrogatories. During this period

the jury sent a note to the Judge that one of the panel "may have misunderstood the decision re: award of damages", and asked if it would be possible to reconsider this aspect of the verdict. Counsel for all parties agreed that the Judge should make specific inquiry on the nature of this supposed misunderstanding. This resulted in a second note from the jury which read as follows: "One of the jurors did not understand that the $600,000 was a one time payment. Since this decision was not unanimous, we would like the opportunity to be able to deliberate on this decision. Again — only if this is possible within the law & will not jeopardize the trial." The general rule is that where the record demonstrates substantial confusion among the jurors in reaching a verdict, the court should direct a new trial to prevent a miscarriage of justice to individual litigants (*Pache v Boehm,* 60 AD2d 867). However, where the confusion assertedly surrounds only the reporting of a verdict properly reached, correction of such a verdict is not an impeachment of the verdict, but is merely a correction of a clerical mistake. Still, such an attempt at correction must be supported by affidavits of all the jurors that an honest mistake had been made (*Rose v Thau,* 45 AD2d 182).

◼ Here, the supposedly confused juror was identified as the forelady, juror number 1. The nature of the alleged confusion is that juror number 1, because of the lateness of the hour and the pressures of deliberating all day, had given in and joined four other jurors on the supposed assumption that the $600,000 award was to be one of several payments rather than a lump-sum award. In the first place, this verdict cannot be challenged for error in reporting, inasmuch as the challenge is not supported by affidavits of all the jurors, nor even by an affidavit of the supposedly confused juror, but rather solely by an affidavit of juror number 2, the lone dissenter on the issue of damages. Second, this verdict cannot be set aside or a new trial ordered because of any confusion of substance in reaching the verdict. Juror number 2 was in favor of a greater award to the infant plaintiff, and she alleges that juror number 1 gave in to compromise with the majority only in the mistaken belief that the total award would be considerably more than $600,000. We have already indi-

cated our view that the verdict as rendered is consistent with the evidence in this record. Finally, the danger of relying upon the affidavit of only one juror (especially, in this case, the dissenting juror) in impeaching the verdict is that there is no corroboration of the alleged confusion on the part of juror number 1. Uncorroborated references by juror number 2 to statements made by juror number 1 during secret deliberations within the sanctity of the jury room cannot be a basis for impeachment of a verdict (*Relyea v Schuylerville Cent. School Dist.,* 65 AD2d 672). "[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. * * * If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation — to the destruction of all frankness and freedom of discussion and conference." (*McDonald v Pless,* 238 US 264, 267-268.)

The judgment should be modified to grant judgment in favor of the city, on its proportion of liability, over against the contractors in indemnification. The order denying plaintiffs' motion to set aside the jury verdict and direct a new trial on the issue of damages should be affirmed.

The judgment, Supreme Court, New York County (CRANGLE, J.), entered January 10, 1981, should be modified, on the law and in the exercise of discretion, without costs, to grant judgment over, in favor of defendant City of New York, against defendants Poirer & McLane Corporation and Raymond DiMenna Corporation, and otherwise affirmed. The order, Supreme Court, New York County (CRANGLE, J.), entered November 14, 1980, should be affirmed, without costs.

ASCH, J. P., BLOOM, MILONAS and ALEXANDER, JJ., concur.

Order, Supreme Court, New York County, entered on November 14, 1980, unanimously affirmed, without costs and without disbursements, and judgment of said court entered on January 10, 1981, unanimously modified, on

the law and in the exercise of discretion, without costs and without disbursements, to grant judgment over, in favor of defendant City of New York, against defendants Poirer & McLane Corporation and Raymond DiMenna Corporation, and otherwise affirmed.