■ SUSAN WINGATE, Individually and as Administratrix of the Estate of JOHN M. WINGATE, JR., Deceased, Appellant, v LONG ISLAND RAILROAD et al., Respondents. — Motion for reargument and clarification granted to the extent of recalling the memorandum decision filed with the order of this court (92 AD2d 797) entered on March 17, 1983, and republishing said memorandum to read as follows: Judgment, Supreme Court, New York County (Klein, J.), entered December 3, 1981, on a jury verdict in favor of plaintiff in the sum of $30,000, unanimously reversed and vacated, on the law, on the facts and in the exercise of discretion, and the matter remanded for a new trial, without costs or disbursements. The action was brought to recover damages resulting from the death of the decedent, who was killed under the wheels of a Long Island Railroad train at Jamaica station on July 10, 1978. At the close of trial, the court submitted a special verdict to the jury in this form and received these answers:

"1. Was the defendant Long Island Railroad negligent in this case and was such negligence a proximate cause of the occurrence?

Yes

Yes or No

"2. If you determine that the defendant Long Island Railroad was negligent, state the amount of money damages the plaintiff is entitled to:

$150,000

"3a. State the percentage of fault attributable to the decedent Wingate.

80%

"3b. State the percentage of fault attributable to the defendant Long Island Railroad.

20%

Total 100%"

Judgment was thereupon entered in favor of plaintiff in the sum of $30,000. The subsequent motion by plaintiff for entry of judgment in the sum of $150,000 was denied. The court rejected the contention that the jury had intended to award the net sum of $150,000 after having apportioned liability between the parties. In support of the motion, plaintiff offered the affidavit of the forelady of the jury, that, in reaching the decision that plaintiff was entitled to $150,000, the jury had already reduced the total award by 80% to account for the decedent's culpable conduct. The Trial Judge, finding no indication that the jury was confused, held that the deliberations of the jury could not be impeached (*People v De Lucia*, 20 NY2d 275). It is apparent that the special verdict lacked sufficient clarity in that, although the questions in the special verdict did conform to the language of the court's charge, question No. 2 was unclear and confusing so as to create an issue as to the precise amount the jury intended to finally award the plaintiff. The words "entitled to" generally carry the connotation that they refer to the net sum to be awarded to plaintiff, as distinguished from the gross or total money damages award before

any reduction for comparative negligence, attributable to the plaintiff's conduct. Although the rule is well established that jurors may not be permitted to impeach their own verdict (*People v Sprague,* 217 NY 373, 381; *People v De Lucia,* 20 NY2d, at p 283; *Relyea v Schuylerville Cent. School Dist.,* 65 AD2d 672; Fisch, NY Evidence [2d ed], § 305; Richardson, Evidence [10th ed], § 407), the general principle has exceptions. A special verdict is not inviolate and may be set aside under certain circumstances. Thus, judicial intervention is authorized where there are errors in reporting a verdict or substantial confusion in reaching a verdict (see *Pache v Boehm,* 60 AD2d 867; *Koroluck v Giordano's Serv. Center,* 34 AD2d 1013; cf. *Rodriguez v Baker,* 91 AD2d 143). Errors in reporting may be corrected as a clerical mistake and where there are inherent defects, confusion or ambiguity in the verdict, a new trial should be directed in the interest of justice. The present case is unlike the situation which confronted us in *Rodriguez v Baker* (*supra*). We are not faced here with any issue as to the need for corroboration with respect to the ambiguity or confusion which permeates the verdict. In *Rodriguez,* the dissenting juror had reported to the court that another juror was confused and sought to have the jury afforded an opportunity to deliberate further. There was no confirmation by any of the other jurors as to any confusion or ambiguity. Here, the verdict, clothed in ambiguity and confusion, should be set aside and a new trial ordered to prevent a miscarriage of justice. The ambiguity had been brought to the attention of the Trial Justice before the jury was discharged and could have been corrected or at least clarified at that time (cf. *Collins v Weinberg,* 88 AD2d 1037). However, even if we were to assume that there was no ambiguity or confusion about the special verdict, there is an additional basis for a trial *de novo,* namely, the court's ruling that the unreduced total sum awarded for damages for the decedent in the sum of $150,000 was not so inadequate as to shock the court's conscience. We disagree with this conclusion. Decedent, at the time of his death, was 37 years of age and was survived by plaintiff, his wife, and a seven-year-old daughter. He also left two children from a prior marriage. He was employed as a restaurant manager at a weekly salary of $460 ($23,920 per annum) and with an annual bonus of $3,000 to $4,000. The proof showed that the decedent had contributed the bulk of his earnings toward the care and support of his family, with $45 per week contributed toward the support of the two children from the prior marriage. There was testimony that, at the time of trial, persons in the position of decedent earned in the range of $50,000. An expert, presenting economic testimony, opined that decedent would have been earning approximately $38,285 per year at the time of trial and that he had an approximate 20-year work-life expectancy. Therefore, if we were to accept the premise of the court that the total award before reduction for culpability was $150,000, that figure does shock the court's conscience. Further, it is apparent that the repeated conflict between the court and counsel, allegedly to effect an acceptance of a settlement offer (which was in excess of the $150,000 figure) as well as the irregular practice of polling the jury during trial to ascertain whether the jurors believed that the court had been fair and impartial, unnecessarily injected into the case personality issues which may have militated against a fair trial. Accordingly, in the exercise of discretion, we have concluded that a new trial on all issues is necessary. Concur — Murphy, P. J., Kupferman, Sandler, Carro and Kassal, JJ.