McDONALD AND UNITED STATES FIDELITY AND GUARANTY COMPANY *v.* PLESS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 283. Argued May 13, 1915.—Decided June 14, 1915.

The Conformity Act—Rev. Stat., § 914—does not apply to the power of the court to inquire into the conduct of jurors. The courts of each jurisdiction, state and Federal, must be in a position to adopt and enforce their own self-preserving rules.

While Rev. Stat., § 914, does not apply in this case, this court recognizes the same policy that has been declared by that court and by the courts in England and in most of the States of the Union, that the testimony of a juror may not be received to prove the misconduct of himself or his colleagues in reaching a verdict.

The rule, endorsed by this court in this case, that a juror may not impeach his own verdict is based upon controlling considerations of public policy which in such cases chooses the lesser of two evils.

While jurors should not reach a verdict by lot, or, as in this case, by averaging the amounts suggested by each, the verdict may not be set aside on the testimony of a juror as to his misconduct or that of his colleagues.

206 Fed. Rep. 263, affirmed.

THE facts, which involve the validity of a verdict and judgment of the Circuit Court of the United States in an action for services, are stated in the opinion.

 Mr. *Julius C. Martin,* with whom *Mr. Thos. S. Rollins* and *Mr. Geo. H. Wright* were on the brief, for petitioners.

 Mr. *Joseph W. Bailey* for respondents.

 MR. JUSTICE LAMAR delivered the opinion of the court.

 Pless & Winbourne, Attorneys at Law, brought suit in the Superior Court of McDowell County, North Carolina, against McDonald to recover $4,000 alleged to be due them for legal services. The case was removed to the then Circuit Court of the United States for the Western District of North Carolina. There was a trial in which the jury returned a verdict for $2,916 in favor of Pless & Winbourne. The defendant McDonald moved to set aside the verdict on the ground that when the jury retired the Foreman suggested that each juror should write down what he thought the plaintiffs were entitled to recover, that the aggregate of these amounts should be divided by 12 and that the quotient should be the verdict to be returned to the court. To this suggestion all assented.

 The motion further averred that when the figures were read out it was found that one juror was in favor of giving plaintiffs nothing, eight named sums ranging from $500 to $4,000 and three put down $5,000. A part of the jury objected to using $5,000 as one of the factors inasmuch as the plaintiffs were only suing for $4,000. But the three insisted that they had as much right to name a sum above $4,000 as the others had to vote for an amount less than that set out in the declaration. The various amounts were then added up and divided by 12. But by reason of including the three items of $5,000 the quotient was so much larger than had been expected that much dissatisfaction with the result was expressed by some of the jury. Others however insisted on standing by the bargain and

the protesting jurors finally yielded to the argument that they were bound by the previous agreement, and the quotient verdict was rendered accordingly.

The defendant further alleged in his motion that the jurors refused to file an affidavit but stated that they were willing to testify to the facts alleged, provided the court thought it proper that they should do so. At the hearing of the motion one of the jurors was sworn as a witness, but the court refused to allow him to testify on the ground that a juror was incompetent to impeach his own verdict. That ruling was affirmed by the Court of Appeals. (206 Fed. Rep. 263.) The case was then brought here by writ of error.

On the argument here it was suggested that it was not necessary to consider the question involved as an original proposition, since the decision of the Federal court was in accordance with the rule in North Carolina (*Purcell* v. *Railroad Co.*, 119 N. Car. 739) and therefore binding under Rev. Stat., § 914, which requires that 'the practice, pleadings, and forms and modes of procedure in the Federal courts shall conform as near as may be to those existing in the State within which such Federal courts are held.' But neither in letter nor in spirit does the Conformity Act apply to the power of the court to inquire into the conduct of jurors who had been summoned to perform a duty in the administration of justice and who, for the time being, were officers of the court. The conduct of parties, witnesses and counsel in a case, as well as the conduct of the jurors and officers of the court may be of such a character as not only to defeat the rights of litigants but it may directly affect the administration of public justice. In the very nature of things the courts of each jurisdiction must each be in a position to adopt and enforce their own self-preserving rules. *Nudd* v. *Burrows*, 91 U. S. 427 (4), 441; *Railroad Co.* v. *Horst*, 93 U. S. 291, 300; *Grimes Co.* v. *Malcom*, 164 U. S. 483, 490; *Lincoln* v. *Power*, 151 U. S.

436, 442; *Burgess* v. *Seligman*, 107 U. S. 20, 33; *Liverpool &c. Co.* v. *Friedman*, 133 Fed. Rep. 716.

But though Rev. Stat., § 914, does not make the North Carolina decisions controlling in the Federal court held in that State, we recognize the same public policy which has been declared by that court by those in England and most of the American States. For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.

These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended

to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

The rule on the subject has varied. Prior to 1785 a juror's testimony in such cases was sometimes received though always with great caution. In that year Lord Mansfield, in *Vaise* v. *Delaval*, 1 T. R. 11 refused to receive the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some States, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible. And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule "would open the door to the most pernicious arts and tampering with jurors." "The practice would be replete with dangerous consequences." "It would lead to the grossest fraud and abuse" and "no verdict would be safe." *Cluggage* v. *Swan*, 4 Binn. 155; *Straker* v. *Graham*, 4 M. & W. 721.

There are only three instances in which the subject has been before this court. In *United States* v. *Reid*, 12 How. 361, 366, the question, though raised, was not decided because not necessary for the determination of the case. In *Clyde Mattox* v. *United States*, 146 U. S. 140, 148, such evidence was received to show that newspaper comments on a pending capital case had been read by the jurors. Both of those decisions recognize that it would not be safe to lay down any inflexible rule because there

might be instances in which such testimony of the juror could not be excluded without "violating the plainest principles of justice." This might occur in the gravest and most important cases; and without attempting to define the exceptions, or to determine how far such evidence might be received by the judge on his own motion, it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict. The principle was recognized and applied in *Hyde* v. *United States,* 225 U. S. 347, which, notwithstanding an alleged difference in the facts, is applicable here.

The suggestion that, if this be the true rule, then jurors could not be witnesses in criminal cases, or in contempt proceedings brought to punish the wrongdoers is without foundation. For the principle is limited to those instances in which a private party seeks to use a juror as a witness to impeach the verdict.

*Judgment affirmed.*