UNITED STATES, Appellee

v

EDWARD M. WEST, Airman Basic, U. S. Air Force, Appellant

No. 27, 230

May 10, 1974

*Lieutenant Colonel James LaBar* argued the cause for Appellant, Accused. With him on the brief was *Colonel William E. Cordingly.*

*Major Stark O. Sanders, Jr.,* argued the cause for Appellee, United States. With him on the brief was *Colonel C. F. Bennett.*

## OPINION

DUNCAN, Chief Judge:

After having been found guilty of three robbery offenses, in violation of Article 122, Uniform Code of Military Justice, 10 USC § 922, and the disobedience of a lawful order, in violation of Article 91, UCMJ, 10 USC § 891, on May 6, 1972, Airman Basic Edward M. West was sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for 7 years. The convening authority disapproved the disobedience offense, but approved the robbery convictions and only so much of the sentence as provided for the bad-conduct discharge, total forfeitures, and confinement at hard labor for 6 years and 6 months. We affirm.

On May 12, 1972, appellant filed a request for "proceedings in revision, reconsideration or other appropriate re-

lief." The request was based on a post-trial affidavit submitted by Staff Sergeant Bruce R. Dortin, a court member, and a tally sheet[1] apparently used by the court members in their deliberations. The request was denied. Based on the post-trial affidavit and tally sheet, West complains that the military judge's instructions were not followed by the court members in two ways. First, the sentence was voted in parts instead of as a whole, with the sentence to a punitive discharge voted upon before the sentence to confinement. Second, after a failure to agree on a term of confinement from among the written proposals of the members, a term of confinement was proposed orally and subsequently adopted by secret written ballot. The alleged impropriety, appellant contends, resulted in a denial of military due process and prejudice to him.

The military judge instructed:

---

[1] This writing listed the categories: Discharge, Type of Discharge, Confinement, and Forfeitures, and under each of the categories the words yes and no and the number of years under the yes and no headings. Apparently the writing evidences the tabulated votes for each of the categories.

When the court has completed its discussion, any member who desires to propose a sentence will write his proposal on a slip of paper. The junior member will collect the proposed sentences and submit them to the president. The court will then vote by secret written ballot on the proposed sentences, beginning with the lightest, until a sentence is adopted by the concurrence of the required number of members. The junior member shall in each case collect and count the votes; the count shall be checked by the president, who shall forthwith announce the result of the ballot to the members of the court.

The affidavit states, as follows:

It was decided to consider the sentence of Airman Basic Edward M. West in 3 separate portions—discharge, amount of confinement, forfeitures. After discharge was voted on, the members by secret ballot proposed amounts of confinement. The amounts proposed were 6 months, 1 year, 3 years, 5 years, 10 years and 15 years. The seven year sentence arrived at was never proposed by a secret written ballot and was orally suggested by an unremembered member of the panel.

A threshhold question is whether the matters raised in the juror's affidavit should be considered as competent evidence to impeach the jury's determination. The Court has been faced with this question only on four previous occasions. In the first case, United States v Bourchier, 5 USCMA 15, 17 CMR 15 (1954), we dealt with the affidavits of third parties, not the jurors themselves, on the subject of unlawful command influence upon the military jury. One affiant related the purported statement of a juror —later denied by affidavit of the juror himself—to the effect that the court members were told just how to vote in the case. 5 USCMA at 27, 17 CMR at 27. Another affidavit which related purported conversations between the trial counsel and a third party on the subject of the commander's desire for a conviction in the case were denied in affidavits of the trial counsel and the third party. The claim of error was resolved as follows, Judge Brosman writing:

It is perfectly clear that the motion and supplemental affidavits represent an impermissible attempt to impeach the findings of the court-martial. The fundamental rule that the testimony of jurors will not be received to impeach their verdict, with respect to matters which essentially inhere therein, is too well settled to require citation of authority. We are not unmindful of the fact that an exception to this principle permits the reception of such testimony when it relates to extraneous influences to which the jurors have been exposed. . . . However, this exception offers little solace to the defense. The affidavits tending to impeach the findings here did not come from a member of the court-martial; they are merely those of third parties professing to report the statements of a member made without the sanction of an oath. It is equally well settled that affidavits of this nature are inadmissible, and that the declarations of jurors, not under oath, made subsequent to the trial, in the presence of third parties, are not competent to impeach the verdict.

United States v Bourchier, supra at 27, 17 CMR at 27 (citations omitted).

Three cases decided by this Court have involved post-trial actions by courts-martial members seeking clemency for the accused. In United States v Walker, 7 USCMA 669, 23 CMR 133 (1957), a letter of clemency from the court members in the record of trial was considered, not for the purpose of impeaching their verdict of premeditated murder, but for its relevance in demonstrating "the impact of incomplete instructions" with respect to evaluating "the factors which add to or detract from the capacity to premeditate." *Id.* at 676, 23 CMR at 140. The Court found in the letter "proof positive that had an instruction been given as to the effect that any heat of passion actually present in the mind of the accused might have had upon his capacity to premeditate, a different finding probably would have resulted." *Id.* at 677, 23 CMR at 141. Needless to say, the letter of clemency's use in this manner went to the very merits of the case. In United States v Tucker, 14 USCMA 376, 34

CMR 156 (1964), and in United States v Huber, 12 USCMA 208, 30 CMR 208 (1961), we rejected the view that a post-trial recommendation for clemency by the court-martial members who imposed the original sentence can be used as "the basis for concluding that the court-martial's sentence was inconsistent in law." United States v Huber, supra at 210, 30 CMR at 210. In so holding we relied upon the "settled law that Federal civil jurors may not impeach their verdicts by post-trial declarations." *Id.* We adhered to this rule even where the clemency petition was inconsistent with the sentence by virtue of its recommendation of a "drastic reduction" in the term of confinement, and suspension or disapproval of a bad-conduct discharge and restoration to duty. United States v Tucker, supra at 382–83, 34 CMR at 162–63. *Huber* and *Tucker,* of course, did not outlaw the right of court members to recommend clemency after trial, since such a procedure is obviously not without value to the convening authority's review of a case,[2] but the two cases did clearly hold that the clemency action would not be allowed to do incompatible double duty by also serving as a vehicle to impeach an otherwise appropriate sentence.

Thus, our own case law is helpful, but does not fully resolve the real issue in this case, *i.e.,* whether a court-martial member's affidavit may serve to support an attack on the sentence by disclosing that the military jury, contrary to instructions, used allegedly erroneous procedures during their deliberations. A look at the federal cases also provides some illumination for the problem even after making allowance for the fact that rigid, secret voting procedures among the jurors themselves are not requirements of a civilian petit jury.

In Mattox v United States, 146 US 140 (1892), the Supreme Court reversed a conviction and granted a new trial in a case where a petition for a new trial had been denied by the trial forum on the grounds that the trial court was without discretion to admit the jurors' affidavits.

The affidavits in question were from two jurors and concerned prejudicial remarks made by the bailiff as well as the introduction into the jury room of a newspaper article containing prejudicial information about the accused which was not otherwise a matter of record. The Court, while recognizing that "great caution" must be exercised in admitting such evidence, and that "cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice" went on to distinguish between two types of jurors' affidavits. 146 US at 148. Matters within the " 'personal consciousness' " of a juror are not admissible, for they are impossible to corroborate from independent evidence. But a court may accept affidavits concerning " 'overt acts' " amounting to jury misconduct, for the evidence of the remaining jurors could be made available to affirm or deny the allegations. Only in the latter situation can it be clear to a reviewing court that the juror has not been tampered with since " 'it is useless to tamper with one, for the eleven may be heard.' " So long as an affidavit tends " 'to prove something which did not essentially inhere in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one,' " and is "material," it is admissible to attack the jury proceedings. 146 US at 148–49.

In an earlier case, United States v Reid, 53 US 361 (1851), relief was denied in a criminal case involving affidavits stating that jurors had been exposed to a newspaper article concerning the trial. The two jurors concerned indicated that the article had not influenced them. The Court held that the facts in the affidavit did not entitle the prisoner to a new trial. In a word, the affidavits simply did not raise a material issue sufficiently capable of invalidating the jury deliberations, as did the affidavits in Mattox v United States, supra.

Hyde v United States, 225 US 347 (1912), is a case where the affidavits were held to raise matters essentially inhering in the verdict. After a long period of deadlock, and upon subsequent

[2] See paragraph 77*a,* Manual for Courts-Martial, United States, 1969 (Rev).

instructions by the trial judge that suggested "a consideration of the possibility of the guilt of some of the defendants and not of others," the jury convicted two of the defendants and acquitted two. Post-trial affidavits indicated the verdicts were "the result of an agreement between certain of the jurors who believed all of the defendants should be convicted and certain jurors who believed that all of the defendants should be acquitted, by which agreement, the acquittal of . . . [two] was exchanged for the conviction of . . . [the other two]." 225 US at 382. The Court held that even considering that the jury would have disregarded instructions that they should avoid a coerced verdict and that the jury would be discharged if they could not conscientiously and freely agree upon a verdict, "[i]t was within the issues of the case to convict some of the defendants and acquit others, and . . . that the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors, and can receive no corroboration." 225 US at 383–84. Relief in *Hyde* was withheld in order to avoid the necessity of crediting the post-trial statement that certain jurors had believed that all of the defendants should be acquitted, which, of course, raised matters of " 'personal consciousness,' " inherently incapable of corroboration.

The Supreme Court addressed an analogous issue in Stein v New York, 346 US 156 (1953), where the Court affirmed a procedure whereby a criminal jury under proper instructions was given both the question of the voluntariness of a confession and the ultimate question of guilt or innocence to decide at the same time. The procedure left the high Court unsure

whether the jury found the defendants guilty by accepting and relying, at least in part, upon the confessions or whether it rejected the confessions and found them guilty on the other evidence. Indeed, except as we rely upon a presumption that the jurors followed instructions, we cannot know that some jurors may not have acted upon one basis, while some convicted on the other.

346 US at 170–71. In upholding the procedure against claims of unconstitutionality, the Court went on to state:

Nor have the courts favored any public or private post-trial inquisition of jurors as to how they reasoned, lest it operate to intimidate, beset and harass them. This Court will not accept their own disclosure of forbidden quotient verdicts in damage cases. McDonald v Pless, 238 US 264, 35 S Ct 783, 59 L Ed 1300. Nor of compromise in a criminal case whereby some jurors exchanged their convictions on one issue in return for concessions by other jurors on another issue. Hyde v United States, 225 US 347, 32 S Ct 793, 56 L Ed 1114. "If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." McDonald v Pless, supra (238 US at 267, 268).

But this inability of a reviewing court to see what the jury has really done is inherent in jury trial of any two or more issues, and departure from instruction is a risk inseparable from jury secrecy and independence. The uncertainty, while the cause of concern and dissatisfaction in the literature of the profession, does not render the customary jury practice unconstitutional.

346 US at 178–79.[3]

In Stein v New York, supra, the Court mentions McDonald v Pless, 238 US 264

---

[3] Just 12 years later, the *Stein* case was overruled on another basis in Jackson v Denno, 378 US 368 (1964), the landmark case which took away from the criminal jury the right to decide the issue of the voluntariness of a confession in the first instance, and placed upon the trial judge the duty to first decide that issue. And, at least as far as Fifth Amendment issues are concerned, the risk of departure from instructions was found to be one which the accused should not have to bear. We note that the Supreme Court in Jackson v Denno, supra, made no suggestion that the *Stein*

(1915), wherein Mr. Justice Lamar reasoned:

> For while by statute in a few jurisdictions, and by decisions in others, the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room.
>
> These two conflicting considerations are illustrated in the present case. If the facts were as stated in the affidavit, the jury adopted an arbitrary and unjust method in arriving at their verdict, and the defendant ought to have had relief, if the facts could have been proved by witnesses who were competent to testify in a proceeding to set aside the verdict. But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could thus be used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

238 US at 267–68.

Although the dicta in Mattox v United States, supra, appears to draw the fine distinction between the non-assailability of a juror's " 'personal consciousness' " and the vulnerability of his " 'overt acts,' " the fact is that it was a jury tampering case. My review of case law leads me to conclude that the great weight of authority is that a verdict cannot be impeached by a member of the jury who claims that the jury failed to follow the court's procedural or substantive instructions.

If the policy which gave rise to the non-impeachment rule is sound, and I believed that it is a prudent judicial balancing of interests, there is no real basis to distinguish the attempted impeachment herein from that ruled on in our prior decisions.

The decision of the U. S. Air Force Court of Military Review is affirmed.

QUINN, Judge (concurring in the result):

I do not believe that the rule against disclosure by a juror of what went on in the jury room is as rigid as the principal opinion indicates. See 24 CJS *Criminal Law* § 1447 (1961). My evaluation of the material presented by the accused convinces me that he has not impeached the validity of the findings of guilty.

Sergeant Dortin's affidavit does not indicate that the lighter sentences to confinement of 6 months, 1 year, 3 years, and 5 years, that were admittedly properly proposed, were not properly voted down before the 7-year period was proposed. More importantly, the fair inference from the careful phraseology of the affidavit is that all the properly proposed lesser sentences were, in fact, voted on in turn, and each did not muster the required percentage. The next proper proposal after the 5-year proposal called for 10 years confinement. The affidavit suggests that someone who had voted for one of the lesser periods of confinement that had been rejected then proposed the 7-year period to bridge the large gap between the voted-down 5-year proposal and the 10-year proposal. The member who presented that proposal erred as to its form, but as far as appears from

result which precluded a juror's affidavit from being competent to show a failure

to follow jury instructions was to be altered.

Dortin's affidavit, the vote on the proposal was entirely proper. Thus, nothing in the affidavit imports any error in the vote that led to the sentence actually imposed upon the accused. Equally apparent is the absence of prejudice to the accused; all the lesser periods of confinement properly proposed had been properly disposed of, and the new proposal provided for less confinement than the next proposal that would have come up for consideration. For these reasons, I would affirm the decision of the Court of Military Review.

Senior Judge FERGUSON did not participate in this case.