Anna R. JOHNSON and Robert K. Johnson, Plaintiffs,

v.

Phillip KNAPP, Defendant.

No. 74 Civ. 5437 (WCC).

United States District Court, S. D. New York.

Nov. 24, 1976.

Helen F. Krause, Trumbull, Conn., for plaintiffs.

Anthony L. Schiavetti, New York City, for defendant; Arthur N. Seiff, New York City, of counsel.

CONNER, District Judge.

On May 4, 1976, the above-captioned medical malpractice action, tried before this Court and a jury, was concluded by the jury's return of a verdict for defendant. An appeal from the judgment pursuant to that verdict is presently pending in the Second Circuit.

Plaintiffs now move this Court for a new trial under Rule 59 F.R.Civ.P. Although the time within which plaintiffs might have duly moved under Rule 59 had run prior to the filing of the instant motion, this Court will regard plaintiffs' application as a motion to set aside the judgment pursuant to Rule 60(b) F.R.Civ.P. Measured by the strictures of Rule 60, plaintiffs' motion is clearly timely.[1]

Plaintiffs rest their motion on a June 2, 1976 letter, as well as a newspaper clipping attached thereto, written by a member of the former jury panel and ad-

---

1. Divested of its jurisdiction by the appeal now pending, this Court could not, of course, presently grant the relief now sought. However, the interests of judicial economy dictate this Court's present consideration of the motion's merits. See *Ryan v. United States Lines Company,* 303 F.2d 430, 433–34 (2d Cir. 1962); *Harper Bros. v. Klaw,* 272 F. 894 (2d Cir. 1921).

dressed to defendant's trial counsel. According to plaintiffs, the letter and its attachment demonstrate that the verdict rendered against plaintiffs had been tainted by juror prejudice.

The letter that has prompted the instant motion reads as follows:

"Dear Mr. Begos,

This letter is several weeks overdue as I was selected for another case after JOHNSON VS. KNAPP, (April 26, 1976).

The reason I wish to write you was to let you know being my first experience as a juror, I found your presentation as a trial lawyer titillating.

Your enunciation and fine resonance [sic] voice helped me to follow the case effortlessly as I have partial hearing and given to much more care and observance to the speaker.

During your summation when you emphasized to the jury not to let the personality of the lawyers influence our decision —well, you almost lost Juror No. 5—as I thought you might have directed that one to me!

I was wondering if that was a difficult one for you—I was pleased of the outcome, but annoyed it took a full day.

Thanking you for making may day in Court an enjoyable experience.

Fondly
s/ Laura Lee Lewis

P.S. Enclosed is a clipping dated 4/16 which caught my attention 10 days before the case—"

The above-quoted communication, plaintiffs argue, reflects two aspects of gross juror misconduct on the part of its author: a romantic infatuation that blinded her, and a physical disability that deafened her, to the facts of the case as adduced at trial. Moreover, plaintiffs urge, the newspaper item to which that letter refers—an account of the high jinks of one "Dr. Charlie," a "get-em-out-fast cataract surgeon" with a show business-eye's-view of his profession—is evidence that "ten days before the trial" of plaintiffs' claims for damages allegedly resulting from the negligent performance of a cataract operation, the juror

"had a preconceived idea that a cataract operation was a simple, comical operation, * * * [but] failed to reveal this fact to the Court at the time of selection of the jury."

■ Were trial counsel straitened by judicial rule to act a part so dull that he might not inspire admiration, were a juror to be condemned for taking pains to observe the trial before her, or were a newspaper article casting doubt upon one surgeon's sober dedication to his work somehow to be construed as a litigative boon to another surgeon sued for alleged malpractice, plaintiffs' challenge to the jury verdict in their case might have some force. Even if such propositions were in some manner raised to the level of reasonableness, the present case would nevertheless fail to describe one of those exceptional circumstances warranting a divergence from the general rule that a juror's statement may not be used to impeach that juror's verdict, see *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *Grace Lines, Inc. v. Motley,* 439 F.2d 1028 (2d Cir. 1971). In response to plaintiffs' motion, this Court can do no better than to remind plaintiffs that

"it would be impracticable to impose the counsel of absolute perfection that no verdict shall stand, unless every juror has been entirely without bias, and has based his vote only upon evidence he has heard in court. It is doubtful whether more than one in a hundred verdicts would stand such a test; and although absolute justice may require as much, the impossibility of achieving it has induced judges to take a middle course, for they have recognized that the institution could not otherwise survive; they would become Penelopes, forever engaged in unravelling the webs they wove." *Jorgensen v. York Ice Machinery Corporation,* 160 F.2d 432, 435 (2d Cir. 1947).

Were this action remanded by the Court of Appeals, plaintiffs' motion would be denied.

SO ORDERED.