**Edward J. WILSMANN, Plaintiff,**

v.

**The UPJOHN COMPANY, and Homemakers, Inc., foreign corporations, Defendants.**

**No. K77–317 CA4.**

United States District Court, W.D. Michigan, S.D.

Oct. 12, 1983.

Gordon C. Miller, Richard C. Walsh, Walsh, Miller, Rayman & Langeland, Kalamazoo, Mich., for plaintiff.

Thomas G. Parachini, Dirk J. Holkeboer, Brown, Colman & DeMent, Kalamazoo, Mich., for defendants.

## OPINION

BENJAMIN F. GIBSON, District Judge.

The plaintiff brought this action in June 1977 seeking damages on various theories including a claim under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder. After a jury trial which lasted approximately ten days, a verdict in favor of the plaintiff was returned on the 10b–5 claim and damages were assessed at $1,578,107.00.

At the Court's instruction, the plaintiff prepared a judgment to be entered in the matter. The defendants objected to the form of the proposed judgment which sought prejudgment interest at the rate set by M.C.L.A. § 600.6013.[1] The Court requested the parties to submit briefs on the issue of whether the award of prejudgment interest is appropriate in this matter and, if it is, whether the Michigan statutory rate should be used.

A hearing on this issue was held on October 7, 1983. At the hearing, both parties made offers of proof regarding information they had received from several jurors during conversations with the jurors regarding the trial. The specific information concerned whether or not the jury included interest as an element of the award of damages. The defendants contend that the jury did include interest as an element of damages and that the Court should therefore decline to award prejudgment interest. Before the question of whether prejudgment interest is appropriate here can be answered, the Court must answer a threshold question—i.e., whether it is appropriate for the Court to consider evidence concerning the method used by the jury to reach its damage award.

Rule 606(b), Fed.R.Evid., states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement

---

1. M.C.L.A. § 600.6013 states in relevant part:
 (1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section.
 (2) For complaints filed before June 1, 1980, in an action involving other than a written instrument having a rate of interest exceeding 6% per year, the interest on the judgment shall be calculated from the date of filing the complaint to June 1, 1980 at the rate of 6% per year and on and after June 1, 1980 to the date of satisfaction of the judgment at the rate of 12% per year compounded annually. This Court has construed § 600.6013(2) to mean that the interest is compounded annually from the date of filing of the complaint. *American Anodco, Inc. v. Reynolds Metals Co.,* 572 F.Supp. 895 (W.D.Mich.1983).

occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

Even assuming, as the defendants argue, that Rule 606(b) does not apply in this situation because the evidence would not be sought to impeach, or inquire into the validity of, the verdict, the policy considerations behind Rule 606(b) are nonetheless important.

*McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), is the leading case in this area. There, in the context of a motion for new trial, the Court discussed the considerations behind the policy of not allowing jurors to testify as to what went on in the jury room:

> [L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all

frankness and freedom of discussion and conference.

238 U.S. at 267–68, 35 S.Ct. at 784–85. *See also Gault v. Poor Sisters of St. Francis*, 375 F.2d 539, 549–51 (6th Cir.1967). Although the cases dealing with the problem of receiving some sort of evidence regarding a jury's deliberations have arisen primarily in the context of motions for new trials and/or remittitur, the Court is of the opinion that the reasoning of these cases is applicable to the facts of the instant case. It is clear that in both situations the moving party is seeking the same basic relief— i.e., to reduce the total amount of money to be paid to the plaintiff.

In the instant case, the fears expressed above have come to pass. The defendants' counsel received the information by telephoning five of the six jurors who deliberated and, at some point, inquiring into the method by which the jury reached the figure of $1,578,107.00.[2] The plaintiff's counsel then contacted some of the jurors to investigate on their own.

At the hearing on this matter, counsel for the defendants suggested that the jurors' statements could be incorporated into affidavits for the Court's consideration. Presumably, some form of "counter-affidavits" would be submitted by the plaintiff. In the alternative, the jurors could be brought into the court to testify under oath as to how the damage award was computed. They would presumably be subject to examination by both the Court and the parties.

A procedure such as this would have the clearly detrimental effect upon the jury system discussed in *McDonald v. Pless*. Once a verdict is reached, the jurors should not be submitted to this type of inquiry, which borders on harassment. In the instant case, for example, it would be necessary to determine whether each juror agreed to the *process* of reaching the final damage figure or merely agreed to the *result* of that process as an appropriate meas-

---

**2.** Defendants' counsel states that it was one juror, on his own, who first raised the issue that the jury may have included interest in their damage award. The Court has no reason to dispute this.

ure of damages. This the Court shall not do.

▉ To begin an investigation of the scope required by defendants' suggestion would be to open the door to other intrusions into the jury's decision-making processes.[3] Although an exception to Rule 606(b), as it has been applied, allows a court to inquire "into any extraneous influences brought to bear upon a jury in order to show what the influences were and whether they were prejudicial," *In re Beverly Hills Fire Litigation,* 695 F.2d 207, 213 (6th Cir. 1982), the case at bar does not fall within the exception.[4] This case clearly being one where the inquiry is into the mental processes of the jurors, evidence of the type offered by the defendants should not, and will not, be considered by the Court. *See Generally* Fed.Proc., L.Ed. *Witnesses* §§ 80:10–80:12 (1981).

▉ Turning to the question of prejudgment interest, the Court is of the opinion that based upon the circumstances of this case and upon consideration of the evidence adduced at trial the award of prejudgment interest is appropriate. *See Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 990 (6th Cir.1982). The jury's verdict necessarily included a finding that the defendants committed a fraud upon the plaintiff. As a result of this fraud, the plaintiff was deprived of the use of his money, and the defendants had the benefit of their fraud, for many years. *See, e.g., Holmes v. Bateson,* 583 F.2d 542, 564 (1st Cir.1978). The plaintiff, therefore, can only be made whole if prejudgment interest is awarded to him.

The Court also believes that the rate set by M.C.L.A. § 600.6013 is an appropriate rate which, in the light of recent economic times, is not unduly high. In addition, the use of a standard rate prevents application of an *ad hoc* rate-setting system which could be used to penalize a defendant, rather than just to make the plaintiff whole.

For the reasons discussed above, the plaintiffs proposed judgment shall be entered.

## JUDGMENT

This action came on for trial before the Court and a jury, The Honorable Benjamin F. Gibson, United States District Judge presiding, and the issues having been duly tried and the jury having duly rendered its verdict as to Count I on fraud;

IT IS THEREFORE ORDERED and ADJUDGED that the plaintiff, EDWARD J. WILSMANN, recover of the defendants, THE UPJOHN COMPANY and HOMEMAKERS, INC., the sum of One Million Five Hundred Seventy Eight Thousand One Hundred and Seven and no/100 ($1,578,-107.00) Dollars; plus interest compounded annually (a) at the rate of six percent (6%) per annum from June 27, 1977, to May 31, 1980 and (b) at the rate of twelve percent (12%) per annum from June 1, 1980, to date of Judgment; plus his costs of action to be taxed; plus interest at the statutory rate after the date of Judgment.

IT IS SO ORDERED.

---

3. For example, the argument raised here could be used to support an investigation into whether a jury in a case brought under the civil rights laws included an amount to defray attorney fees in its damage award. *See, e.g., Gault, supra.* If this were done, every motion for attorney fees pursuant to 42 U.S.C. § 1988 could require a major investigation into the jury's decision-making process.

4. The exception has been limited to situations such as jury tampering or outside communications to the jurors during their deliberations. *See, e.g.,* cases cited in *Gault,* 375 F.2d at 551.