OPINION OF THE COURT
Lottie E. Wilkins, J.
Nearly 100 years ago, the United States Supreme Court warned against the perils of a system in which jury verdicts could be lightly impeached by a claim of juror misconduct after the verdict was rendered:
“But let it once be established that verdicts solemnly *665 made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference” (McDonald v Pless, 238 US 264, 267-268 [1915]).
If nothing else, the circumstances surrounding this motion demonstrate the accuracy of that ancient prediction.
In deciding this motion to set aside a verdict pursuant to CPLR 4404, the court considered the affidavits of plaintiffs’ counsel dated March 10, 2005 and April 8, 2005, along with defendant’s undated affirmation in opposition to the motion and annexed affidavits, as well as the various correspondence and other submissions made to the court. Also considered was the testimony of hearings held on April 15 and April 22, 2005 at which three jurors, including the jury foreman, were questioned by the court outside the presence of counsel.'
The underlying action by two female members of the New York City Police Department seeks damages for hostile work environment sexual harassment and subsequent retaliation allegedly perpetrated by two male supervisors. All causes of action in the complaint plead violations of the New York City Human Rights Law, as opposed to violations of state or federal antidiscrimination statutes. Trial began on February 9, 2005. At the close of evidence, the court granted judgment as a matter of law in favor of defendant with respect to plaintiff Anita Ryan’s retaliation claim but submitted the remaining claims to the jury. The jury began deliberations on February 23, 2005 and rendered a verdict in favor of defendant the following day.
Plaintiffs’ testimony at trial was both graphic and disturbing. However, since plaintiffs’ claims were flatly contradicted by the defendant and mostly uncorroborated by witnesses, the jury was faced with the difficult task of weighing the evidence and determining credibility in a classic case of “he said, she said.” By the time the verdict was delivered, the emotional toll of deliberations was evident on the faces of the jurors.
*666 This motion to set aside the verdict is predicated on information obtained from jurors as they were leaving court after completing their jury service. At the close of trial, the court thanked the jury and released them from their jury service. During a brief recess, counsel took the opportunity to speak with some of the jurors as they were exiting the courtroom. As recounted in affidavits later obtained from the jurors, plaintiffs’ counsel was told that, on the second day of deliberations, the jury foreman read the definition of the word “preponderance” to the assembled jurors. During deliberations, there had been no direct communication from the jury indicating that they were having difficulty with this concept. The jury did not ask the court for clarification of the word “preponderance,” nor did they request a rereading of the burden of proof charge in which the court had explained the phrase “preponderance of the evidence.” In all fairness, plaintiffs’ counsel did express concern during deliberations that the jury appeared to be having difficulty with the burden of proof concept and requested that they be recharged on that issue. The court declined to do so, however, because the jury had not made such a request.
In response to plaintiffs’ motion and the accompanying affidavits of five jurors, the court conducted hearings with three jurors—including the foreman—in order to better understand what took place during deliberations.[1] At the hearings it was confirmed that the definition of “preponderance” was read aloud from the dictionary. There was also testimony suggesting that some jurors understood the dictionary definition of that word to differ from the definition provided by the court during its charge on the law, while others appear to have completely forgotten that the court had defined the phrase “preponderance of the evidence” in its charge. Although the foreman testified that the jury had moved past the burden of proof issue by the time he read the definition of “preponderance,” it is impossible to know what effect the reading had on each juror’s mind.
The question presented by plaintiffs’ motion is whether a verdict should be set aside when it becomes apparent that a juror brought a dictionary into the jury room during deliberations and read the definition of a key legal term, in this case “preponderance,” to his fellow jurors. The law, however, provides no clear-cut answer.
*667 A verdict should be set aside only when the misconduct of the jury was likely to cause prejudice to one of the parties. Rather than employ a “per se” rule as to what constitutes prejudicial misconduct, courts make the determination on a “case-by-case basis, and the facts in each case must be examined to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered” (Taylor v Port Auth. of N.Y. & N.J., 202 AD2d 414, 415 [2d Dept 1994] [citations and internal quotation marks omitted]). As this standard suggests, the party claiming misconduct need not prove prejudice to an absolute certainty, but rather, that such prejudicial effect was “likely” (Edbauer v Board of Educ., 286 AD2d 999 [4th Dept 2001]).
In the cases most factually similar to the circumstances here, courts have found a likelihood that prejudicial misconduct occurred. For example, in Ryan v Orange County Fair Speedway (227 AD2d 609, 610 [2d Dept 1996]), the Appellate Division found a “sufficiently high” probability of prejudice to a jury’s damages award when one juror, who held herself out as particularly knowledgeable about personal injuries, took it upon herself to bring outside information into the deliberations. Likewise, in Holland v Levine (39 Misc 2d 103 [Sup Ct, Nassau County 1963]), vacatur was necessary when the jury foreman copied the definition of “negligence” from the Oxford Dictionary and then read it to the assembled jurors during deliberations, urging them to follow the dictionary definition instead of the one given by the trial court.
Under the facts presented here and the applicable law, this court has no alternative but to reluctantly set aside the jury’s verdict. The reading of the dictionary definition of “preponderance,” with its various differences from the definition in the court’s charge on the law, creates a sufficient likelihood that plaintiffs were prejudiced. Although prejudice to the plaintiffs is by no means certain—there was testimony that the dictionary was used mainly to reconfirm that plaintiffs had not proved their claims by a preponderance of the evidence—there is a sufficient likelihood that some jurors had not made up their minds on this issue and that the definition of “preponderance” contained in the dictionary affected their views on that critical question.[2]
*668 Although the specific question presented by the motion is resolved above, the court has spent a great deal of time reviewing this unfortunate situation and considering how it could have been avoided. I feel it may be worthwhile to offer my thoughts on these issues, if for no other reason than to offer advice on how a recurrence may be avoided at the next trial of this action.
First, it appears that the verdict sheet submitted to the jury placed undue emphasis on the “preponderance of the evidence” concept. That is so because all of the liability questions on the verdict sheet began by asking whether the plaintiff had proven “by a preponderance of the credible evidence” that a particular wrong had been committed. Typically, this court does not include the burden of proof terms in its factual interrogatories on the verdict sheet. In this case, however, both sides requested that the questions be phrased in this particular manner and the court acceded to their mutual wishes. In retrospect, it appears that reiterating the burden of proof in each and every factual question raised it to an unwarranted level of prominence in the jury’s minds which, in turn, engendered hesitation and doubt. The better course would be to keep the burden of proof concept in the charge on the law and to present the factual interrogatories as just that—fact-based questions that do not overemphasize broad legal concepts.
Another area where courts can be more proactive is in their charge to the jury on confining their deliberations to the facts and the law presented during the trial. As a matter of habit, this court charges PJI3d 1:25 in almost every case. That charge instructs jurors to consider only the testimony and exhibits adduced at trial. In this technological information age, however, it is easier than ever before for an inquisitive juror to research issues on which they seek additional information. With wireless information technology, such research can often be done right in the courthouse. Although this case involves a more “low-tech” scenario, since the information here was obtained from a book, the principle is the same: jurors must understand that they are to confine their deliberations to the facts and the law presented at trial and not turn to outside sources for information. In this regard, some judges have taken to supplementing their charges to include a warning that jurors should refrain from doing outside research and must direct any factual or legal *669 questions they have to the court. This is an issue trial courts must monitor as easy access to outside information becomes ever more ubiquitous.
Finally, although the law requires vacatur of the jury’s verdict under these circumstances where there is evidence of outside influence, courts must remain vigilant in protecting the integrity of jury verdicts against out-of-court statements made by jurors after their service has ended. The right of litigants to speak to jurors after their service has ended goes without saying. It must be understood, however, that there is a natural human tendency to give comfort to a party who has been dealt a loss at trial and statements by jurors so intended should not lightly be converted into grounds for impeachment of the verdict. That is the reason why this court initially rejected plaintiffs’ motion to set aside the verdict when it was based solely on the averments of counsel and unsupported by affidavits from the jurors who witnessed the events. It seems abundantly clear to this court that if the standard for impeaching a jury verdict is relaxed to the point where counsel can allege misconduct or other improprieties based on the mere recitation of an out-of-court conversation with a juror, then the evils predicted so long ago by the Supreme Court in McDonald v Pless will swiftly come to pass.
Accordingly, it is ordered that the motion to set aside the jury’s verdict is granted.

. Defendant also submitted affidavits from many of the same jurors, including the foreman, which expanded upon and, in some respects, contradicted their statements in plaintiffs’ affidavits.

. It must be stressed that, unlike the situation in Holland v Levine, the court does not believe that the jurors in this case intentionally disregarded the *668 court’s definition of the word “preponderance.” It does appear, however, that some jurors may have forgotten that it was given.