2010 WY 75

**Dallas D. LAKE, Appellant (Plaintiff),**

v.

**D & L LANGLEY TRUCKING, INC., a Nebraska Corporation, and Orval Whited, an Individual, Appellees (Defendants).**

No. S–09–0094.

Supreme Court of Wyoming.

June 9, 2010.

Representing Appellant: Bernard Q. Phelan, Attorney at Law, Cheyenne, Wyoming.

Representing Appellees: Scott E. Ortiz of Williams, Porter, Day, & Neville, PC, Casper, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] This is an appeal from a personal injury negligence case. Dallas Lake was involved in an automobile accident with Orval Whited. Lake alleges Whited, while in the course and scope of employment for D & L Trucking, negligently attempted to pass him as he was making a left hand turn, thereby causing the inevitable collision. The case was tried to a jury. The jury returned a verdict finding Lake eighty-six percent at fault for the accident. Under Wyoming's comparative negligence law, Lake was entitled to no damages.[1] Lake filed a motion for a new trial, which the trial judge denied. Lake appeals, alleging a new trial should be granted because the verdict is unsupported by the evidence. Lake also argues a new trial should be granted because of error in the closing argument of the defense and also because the jury verdict was an impermissible quotient verdict. We affirm.

---

1. The comparative negligence statute, Wyo. Stat. Ann. § 1–1–109 (LexisNexis 2009), states, in pertinent part:

  (b) Contributory fault shall not bar a recovery in an action by any claimant or the claimant's legal representative to recover damages for wrongful death or injury to person or property, if the contributory fault of the claimant is not more than fifty percent (50%) of the total fault of all actors.

## ISSUES

[¶ 2]   Lake presents two issues for our review:

1.   Should a new trial be ordered where there is insufficient evidence that the defendant was only 14% at fault where the defendant['s] semi illegally passed the plaintiff's pickup in the intersection, and the defendant made a surprise argument to the jury which mislead them concerning the law of "no-passing" zones?

2.   Should a new trial be ordered when there is convincing evidence that the verdict was a "quotient verdict?"

## FACTS

[¶ 3]   On the day of the accident, Lake was driving north on Wyoming Highway 214 in a pickup.   Whited, who was driving a tractor-trailer combination truck, was also driving north on Highway 214, some distance behind Lake. Highway 214 is a two-lane highway.   Lake intended to turn left off Highway 214 at County Road 207.

[¶ 4]   Whited was driving a relatively new Peterbuilt tractor, towing a fifty-foot trailer. Whited had an exemplary driving record and was in the process of returning home from a simple day trip.   As he was driving, Whited saw Lake's pickup when he was about three or four miles behind Lake.   Whited noticed that, although he was driving sixty-five miles per hour, the speed limit, he was gaining on the pickup.   As he approached the pickup, he slowed his speed to about fifty-five miles per hour.   There was no solid yellow line on the highway indicating a no-passing zone.   There were no signs on the highway indicating an upcoming intersection.   He saw no brake lights or turn signal coming from the pickup. Whited determined to pass the pickup. Whited did not notice the intersection with the county road.   He turned on his left turn signal and when he was about three car-lengths behind the pickup he pulled over into the left lane and began his pass.

[¶ 5]   Lake had seen the tractor-trailer truck when it was about a half mile behind

him, but he had driven the road so many times he wasn't paying much attention to the road or the tractor-trailer truck.   Lake, without checking his rearview mirror or side-view mirror, began his left hand turn.   He had no idea the tractor-trailer truck was in the process of passing him.   Lake impacted the tractor-trailer truck approximately fifteen feet behind the tractor's front wheel.

[¶ 6]   Lake sued Whited and Whited's employer, D & L Trucking, alleging Whited negligently passed him, causing the accident and resulting personal injuries.[2]   During closing arguments, both sides argued the language of Wyo. Stat. Ann. § 31–5–205(a)(ii) (LexisNexis 2009), which states in essence no passing is allowed

> [w]hen approaching within one hundred (100) feet of or traversing any intersection or railroad grade crossing unless otherwise indicated by official traffic-control devices[.]

Lake's counsel argued the statute provided for "no exceptions."   His counsel stated the law is "do not pass in an intersection under any circumstances."   Defense counsel responded in his closing argument by emphasizing the statute actually does provide for an exception depending on the presence of a traffic-control device.   Defense counsel went on to argue the law was that "unless it is otherwise indicated you can pass."   Defense counsel concluded that, since there was no solid yellow line leading up to the intersection, in attempting to pass Lake, Whited "was not violating any statute."   Lake's counsel did not object to this argument, but rather took the issue up in his rebuttal closing, arguing the yellow lines on highways are not "official traffic-control devices" as contemplated by the statute and therefore the absence of a solid yellow line at the intersection did not make Whited's pass legal.

[¶ 7]   The case was handed to the jury. One of the jury instructions set forth the exact language of § 31–5–205(a)(ii).   The same instruction also contained the following

**2.**   It is undisputed that Whited was working within the course and scope of his employment with

D & L Trucking at the time.

language of Wyo. Stat. Ann. § 31–5–217 (LexisNexis 2009):

> No person shall turn a vehicle or move right or left upon a roadway unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided by this section.

> A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.

> No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal required by this act to the driver of any vehicle immediately to the rear when there is opportunity to give the signal.

The jury was also instructed that "if there appears any difference between the law as stated or implied by an attorney and these instructions, you are to be governed by the instructions." The jury deliberated for three hours. During its deliberations, the jury requested a calculator. The jury returned a verdict that Lake was eighty-six percent at fault and Whited was fourteen percent at fault for the accident. Under Wyoming's comparative fault statute, since Lake was more than fifty percent at fault, he took nothing from the action. Wyo. Stat. Ann. § 1–1–109(b) (LexisNexis 2009).

■■■ [¶ 8] Lake filed a motion for a new trial. Lake contended the evidence was insufficient to support the verdict. Lake also contended the defense counsel, in closing, ambushed him with the argument that Whited did not violate the law in passing at an intersection because no traffic control device directed otherwise. Finally, Lake contended that the jury verdict, attributing eighty-six percent of fault for the accident to Lake and fourteen percent to Whited, was obviously an impermissible quotient verdict.[3] Lake attached an affidavit of one of the jurors to his motion supporting his allegation concerning the possibility of a quotient verdict. After a

hearing, the trial court denied Lake's motion for a new trial.

## DISCUSSION

■■■ [¶ 9] A lower court's decision on whether to grant a new trial is discretionary. *Hannifan v. American Nat'l Bank of Cheyenne*, 2008 WY 65, ¶ 36, 185 P.3d 679, 693 (Wyo.2008); *Pauley v. Newman*, 2004 WY 76, ¶ 17, 92 P.3d 819, 825 (Wyo.2004). "Trial courts have broad discretion when ruling on a motion for new trial, and they will not be reversed absent an abuse of that discretion. A party seeking reversal has a heavy burden; indeed, the party must show that a different result would have been obtained absent the abuse." *Garnick v. Teton Cty. Sch. Dist. No. 1*, 2002 WY 18, ¶ 6, 39 P.3d 1034, 1038 (Wyo. 2002). *See also John Q. Hammons Inc. v. Poletis*, 954 P.2d 1353, 1357 (Wyo.1998). The ultimate question in determining whether an abuse of discretion has occurred is whether the trial court could have reasonably concluded as it did. *Horn v. Welch*, 2002 WY 138, ¶ 8, 54 P.3d 754, 758 (Wyo.2002).

[¶ 10] The availability of the grant of a new trial is governed by W.R.C.P. 59:

**Rule 59. New Trials; Amendment of Judgments.**

(a) *Grounds.*—A new trial may be granted to all or any of the parties, and on all or part of the issues. On a motion for a new trial in an action tried without a jury, the court may open the judgment, if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment. Subject to the provisions of Rule 61, a new trial may be granted for any of the following causes:

(1) Irregularity in the proceedings of the court, jury, referee, master or prevailing party, or any order of the court or referee, or abuse of discretion, by which the party was prevented from having a fair trial;

---

**3.** A quotient verdict is a verdict rendered in pursuance of an antecedent agreement by the jury to determine damages by adding the esti-

mate of each juror and dividing the total by the number of jurors. It may also apply to estimates of fault.

(2) Misconduct of the jury or prevailing party;

(3) Accident or surprise, which ordinary prudence could not have guarded against;

(4) Excessive damages appearing to have been given under the influence of passion or prejudice;

(5) Error in the assessment of the amount of recovery, whether too large or too small;

(6) That the verdict, report or decision is not sustained by sufficient evidence or is contrary to law;

(7) Newly discovered evidence, material for the party applying, which the party could not, with reasonable diligence, have discovered and produced at the trial;

(8) Error of law occurring at the trial.

### Sufficiency of the Evidence

■ [¶ 11] Lake's first issue as presented is actually a compound issue. Initially, Lake suggests a new trial is warranted because the verdict is not sustained by sufficient evidence. W.R.C.P. 59(a)(6). The district court held the evidence sufficient to support the verdict. Specifically, the district court held the evidence supported a finding that Lake did not use his turn signal and did not maintain a proper lookout prior to the collision. This is a reasonable conclusion by the district court. As did the district court, we find substantial and competent evidence supporting the jury's findings, including: Whited's testimony that he never saw a turn signal from Lake's pickup; Lake's testimony that he was not paying attention and began his left hand turn without checking his mirrors; and the physical evidence that reveals that Lake turned into the tractor-trailer truck when the front of that tractor was already more than fifteen feet past the front of Lake's pickup.

[¶ 12] Lake's argument on appeal in support of his contention that the evidence does not support the verdict is quite rudimentary. Lake argues the accident never would have happened had Whited not passed in an intersection; he claims that because passing in an intersection violates state statute, the majority, if not all, the fault must be Whited's.

Lake's argument concludes that, given the jury did not see it this way, the verdict is unsupported by the evidence. Certainly Whited passed at an intersection, but this does not make him strictly liable for the accident. Lake's culpability for the accident must also be taken into account. The jury calculated both party's culpability for the accident exactly as instructed. It determined, based on all the evidence presented, how it believed the accident occurred. It then determined the fault of both parties in regard to the causation of the accident. The jury, taking into account all the facts and circumstances of the case as they determined them to be, attributed fourteen percent of the fault for the accident to Whited. The jury simply concluded Lake bore far more responsibility for the accident. Sufficient evidence supports the jury's allocation of negligence.

### Alleged Surprise in Closing Argument

■ [¶ 13] Lake also suggests a new trial is warranted because the comments in the closing argument of defense counsel regarding the application of § 31–5–205(a)(ii) constituted "a surprise, which ordinary prudence could not have guarded against." W.R.C.P. 59(a)(3). The district court determined the alleged error (if indeed there was an error) in defense counsel's closing was not so prejudicial as to warrant a new trial. Again, this is a reasonable decision by the district court. Without addressing whether the argument was in error, we can find little, if any, room for prejudice. The jury instructions included the actual language of § 31–5–205(a)(ii). Although both counsel argued their respective positions on the application of § 31–5–205(a)(ii) to the facts of the case during closing, the jury was instructed that the written instructions would govern over any argument regarding the law by either counsel. This Court assumes juries follow their instructions. *Amerigas Propane, Inc. v. Bing,* 875 P.2d 1276, 1278 (Wyo.1994); *City of Cheyenne v. Simpson,* 787 P.2d 580, 581 (Wyo. 1990).

[¶ 14] In any event, given the strength of the evidence, it is doubtful any different result would be obtained from a new trial conducted in the absence of this argument.

Consequently, we find the district court did not abuse its discretion in not granting a new trial on the grounds the comments by defense counsel in closing allegedly came as a prejudicial surprise.

### Jury Misconduct

[¶ 15] Lake argues a new trial should be afforded because of jury misconduct. W.R.C.P. 59(a)(2). Lake argues the misconduct was the rendering of an impermissible quotient verdict. He suggests two distinct bodies of evidence support his allegation of an impermissible quotient verdict. First, he points to the affidavit from a juror attached to his motion for a new trial. The affidavit suggests the jury agreed to average individual estimates of fault. The district court determined that it could not consider the affidavit because it violated W.R.E. 606(b). We agree.

[¶ 16] Wyoming Rule of Evidence 606(b) provides:

(b) *Inquiry into validity of verdict or indictment.*—Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

This Rule is a codification of a time honored common law rule that the testimony of a juror cannot be received to impeach the verdict in which he has concurred:

The rule against impeachment of a jury verdict by juror testimony as to internal deliberations may be traced back to "Mansfield's Rule," originating in the 1785 case of *Vaise v. Delaval,* 99 Eng. Rep. 944 (K.B. 1785). Faced with juror testimony that the jury had reached its verdict by drawing lots, Lord Mansfield established a blanket ban on jurors testifying against their own verdict. The rule was adopted by most American jurisdictions and "[b]y the beginning of [the twentieth] century, if not earlier, the near-universal and firmly established common-law rule in the United States flatly prohibited the admission of juror testimony to impeach a jury verdict." *Tanner v. United States,* 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

*United States v. Benally,* 546 F.3d 1230, 1233 (10th Cir.2008). In Wyoming, the rule dates back at least to 1895. The Court in *Bunce v. McMahon,* 6 Wyo. 24, 41, 42 P. 23, 27 (1895), declared: "[T]he affidavits of the jurors cannot be received to impeach their verdict .... The general doctrine is one which is too well established to require any elucidation or citation of authorities." *See also Gustavenson v. State,* 10 Wyo. 300, 320–21, 68 P. 1006, 1009 (1902).

[¶ 17] In 1912, this Court applied the rule to a case in which an allegation was made of a quotient verdict. In the case of *The Pullman Co. v. Finley,* 20 Wyo. 456, 125 P. 380 (1912), the Court dealt specifically with the proffer of the affidavits of two jurors, presented to establish a quotient verdict had been rendered. The *Finley* Court refused to accept such affidavits. It reaffirmed the rule that "the affidavit of jurors cannot be received to impeach their verdict." *Id.* at 480, 125 P. at 386. The Court decreed:

That being the settled rule in this state, the affidavit of the jurors relied upon by the defendant could not be received and considered by the trial court to impeach their verdict on the ground of their misconduct. They were not competent proof of the facts therein deposed to, and the court properly refused to grant a new trial upon this ground.

*Id.* at 480, 125 P. at 386–87.

[¶ 18] Lake argues W.R.E. 606(b) alters the common law rule against jurors impeaching their own verdict, at least in regard to its application to proving quotient verdicts. Lake invokes federal authority to support his argument. Since the language of

W.R.E 606 mirrors that of its federal counterpart, federal authority is highly persuasive. *Walters v. State,* 2008 WY 159, ¶ 13, 197 P.3d 1273, 1277 (Wyo.2008) ("[w]hen this Court construes court rules that are virtually identical to their federal counterparts, relevant federal authority is persuasive"). *See also Lamar Outdoor Advertising v. Farmers Co–Op Oil Co. of Sheridan,* 2009 WY 112, ¶ 12, 215 P.3d 296, 301 (Wyo.2009); *Rawlinson v. Wallerich,* 2006 WY 52, ¶ 12, 132 P.3d 204, 208 (Wyo.2006). Oddly, however, Lake cites to debate on the floor of the United States House of Representatives during the discussion on the bill that eventually resulted in F.R.E. 606. We say "oddly" because the House bill failed. As explained in *Multiflex, Inc. v. Samuel Moore & Co.,* 709 F.2d 980 (5th Cir.1983):

> The draft of Fed.R.Evid. 606(b) as passed by the House of Representatives would have permitted juror testimony about objective matters occurring during the jury's deliberation, such as the reaching of a quotient verdict, see H.Rep. 93–650, U.S.Code Cong. & Admin.News 1974, p. 7075, but the version passed by the Senate, see S.Rep. No. 93–1277 [U.S.Code Cong. & Admin.News 1974, p. 7051] and approved by the Joint Conference Committee expressly denounces such a practice, H.Rep. 93–1597 [U.S.Code Cong. & Admin.News 1974, p. 7098]. This makes clear the drafters' intent that a jury's verdict should not be open to searching the minds and motives of the jurors.

*Id.* at 998 n. 16. Legislative history, then, explicitly contradicts Lake's argument that the juror affidavit in this case is admissible. Longstanding federal precedent also contradicts Lake's argument. In *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), the United States Supreme Court accepted the general rule that "the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict." *Id.* at 269, 35 S.Ct. at 785. Applying this rule, the Supreme Court held juror testimony regarding the possibility of the entry of a quotient verdict was inadmissible. Given this federal authority, we find no reason to overrule *Finley.* The district court

was correct in its ruling that it could not consider the affidavit.

■ [¶ 19] Second, Lake argues that, even without the affidavit, the circumstances alone support a finding that the verdict was a quotient verdict. He directs our attention to the fact the jury requested a calculator. Lake contends the only legitimate use for the calculator would have been the calculation of damages. Since the jury did not award any damages, Lake concludes the jury could only have been using the calculator to compute an averaged percentage of fault for the respective parties.

■ [¶ 20] Even if we were to move beyond this purely speculative conclusion, the fact the jury may have used a quotient process for determining fault does not warrant the presumption the jury ultimately rendered an impermissible quotient verdict. A verdict that is based upon the average judgment of all the jurors is not impermissible where it does not appear that there was an agreement beforehand to abide by the resulting number. As this Court has explained:

> [T]he test to be applied in determining the validity of a quotient verdict is whether the jury agreed "beforehand" to be bound by the result reached, since it is not the mere arriving at the average of the jurors' opinions as to the amount of damage which makes the quotient verdict bad, but the vice consists in an agreement by the jurors to be bound by the result of the addition and division, thus allowing the quotient whatever it may be to stand without subsequent reconsideration. If, however, there is no agreement that the average estimate shall be binding, and the averaging is done merely for the purpose of arriving at a working basis which the jurors are to be free to accept or reject as they see fit, a verdict subsequently agreed to is binding, whether it be for the average or for some other amount.

*Sun Land & Cattle Co. v. Brown,* 394 P.2d 387, 391 (Wyo.1964). In this case, there are no circumstances justifying a presumption any member of the jury entered into an antecedent agreement to be bound by any particular fault estimate. Indeed, the opposite is true. The jury was polled, and each

juror confirmed the verdict reflected her/his individual judgment.

## CONCLUSION

[¶ 21] The district court did not abuse its discretion in denying Lake's motion for a new trial. The evidence was sufficient to support the verdict. If there was any error on the part of defense counsel in closing argument as alleged by Lake, such error was not prejudicial under the facts and circumstances of this case. Finally, there is no evidence supporting Lake's presumption that the jury rendered an impermissible quotient verdict.