Charles MUNAFO, Plaintiff–Appellant,

v.

METROPOLITAN TRANSPORTATION AUTHORITY, New York City Transit Authority, Staten Island Rapid Transit Operating Authority, Alfonse W. Sorrentino, Peter Argenziano, individually and in his official capacity, Samuel Holmes, individually in his official capacity, John J. McCabe, individually and in his official capacity, Owen P. Swords, Esq., individually and in his official capacity, David C. Filimon, individually and in his official capacity, Martin F. Scheinman and John and Jane Doe, 1–4, Defendants–Appellees.

Docket No. 03–7831–CV.

United States Court of Appeals, Second Circuit.

Argued: June 22, 2004.

Decided: Aug. 24, 2004.

Scott A. Korenbaum, New York, New York, for Plaintiff–Appellant.

Dorothea W. Regal, Luisa K. Hagemeier, Hoguet Newman & Regal, LLP, New York, New York, for Defendants–Appellees.

Before: McLAUGHLIN, CABRANES, and WALLACE, Circuit Judges.*

WALLACE, Senior Circuit Judge.

Charles Munafo appeals from an order of the United States District Court for the Eastern District of New York, Edward R. Korman, Chief Judge, denying his motion to alter or amend judgment and denying a new trial. Munafo contends that the district court abused its discretion by refusing to amend its civil judgment and provide a new trial on the issue of damages, or grant a new trial on all issues. He argues that the jury misinterpreted questions on the special verdict form and rendered an inconsistent verdict. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and we have jurisdiction over Munafo's timely filed ap-

peal pursuant to 28 U.S.C. § 1291. We affirm.

## I.

In 1999, the Staten Island Rapid Transit Operation Authority (Authority) terminated Munafo's employment in its Maintenance of Way Department (Track Department) following a series of disciplinary actions for alleged insubordinate conduct. At the time, defendants Peter Argenziano, David Filimon, John McCabe, and Alphonse Sorrentino were managerial employees at the Authority. Sorrentino, Munafo's immediate supervisor in the Track Department, initiated the disciplinary proceedings against Munafo and served as principle complainant. Argenziano, Filimon, and McCabe presided over various phases of the proceedings as hearing officers.

After exhausting the Authority's contractual grievance procedures, Munafo filed a civil action in federal court against Sorrentino, Argenziano, Filimon, McCabe, and other individual and corporate defendants primarily pursuant to 42 U.S.C. § 1983. His complaint alleged that the defendants denied him due process and violated his First Amendment free speech rights by terminating his employment in retaliation for his safety complaints and union activities. The district court denied the defendants' motion to dismiss on qualified immunity grounds. On appeal, we concluded that we lacked jurisdiction to consider the First Amendment claims, and we declined to exercise pendent appellate jurisdiction over the corporate defendants' appeal. *See Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 210 (2d Cir.2002) (*Munafo I*). Nonetheless, we reversed the

---

* The Honorable J. Clifford Wallace, of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

district court's denial of the individual defendants' motions for summary judgment on the due process claims. *See id.*

After remand and at the conclusion of a five-day trial, the district judge instructed the jury that some of Munafo's speech might be constitutionally protected and outlined the jury's role in ascertaining the defendants' motives for terminating Munafo. He explained that the jury must decide whether Munafo's protected speech was a substantial or motivating factor in the defendants' decision to take action against him, but that it must also consider whether the defendants would have terminated Munafo even if he had not engaged in protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Along the way, the district judge stressed that the jury's responsibility was limited to answering the four factual questions on the special verdict form with respect to each defendant; the court would then apply the law to the jury's verdict and render judgment. No party objected to these oral instructions or the questions on the special verdict form.

After deliberating approximately one day, the jury announced its verdict. The completed special verdict form reads as follows:

*Special Verdict Form on the Question of Liability*

1. Do you find that plaintiff engaged in the constitutionally protected speech that the Court described to you?

X Yes ___ No

*If you answered "No" to Question 1, do not proceed to Questions 2, 3 or 4.*

2. *If you answered "Yes" to Question 1,* do you find that plaintiff's constitutionally protected speech was at least a "substantial" or "motivating" factor in his dismissal with respect to the defendant indicated?

| | | | |
|---|---|---|---|
| Alfonso Sorrentino | X Yes | | ___ No |
| Peter Argenziano | X Yes | | ___ No |
| John McCabe | X Yes | | ___ No |
| David Filimon | ___ Yes | X | No |

3. *If you answered "Yes" to Question 2 as to any individual defendant,* do you find that that defendant would have taken the same action even if plaintiff had not engaged in any of the constitutionally protected speech?

| | | | |
|---|---|---|---|
| Alfonso Sorrentino | X Yes | | ___ No |
| Peter Argenziano | X Yes | | ___ No |
| John McCabe | X Yes | | ___ No |
| David Filimon | ___ Yes | X | No |

4. Do you find that plaintiff unreasonably chose not to participate in the disciplinary process provided for by the collective bargaining agreement and that his participation could have led the Standing Board of Arbitration or any other hearing officer in the process to decide not to terminate Mr. Munafo?

___ Yes X No

Upon receiving the jury's special verdict, the district judge announced judgment in favor of all four remaining defendants. He then polled the jurors individually, and each confirmed that the answers provided in open court accurately reflected their views of the case. The jury was subsequently excused from the courtroom.

Moments later, some jurors informed the district judge's law clerk that they had been surprised and disappointed to learn that their special verdict resulted in a

judgment for the defendants. The district judge invited the jury back into the courtroom and inquired once again whether the jury's answers on the special verdict form were correct. The following colloquy ensued:

> THE COURT: My law clerk tells me that you were somewhat surprised when I said that the net effect of your answers to the question was a verdict for the defendants. My question to you is whether the answers that you gave me are your answers to those questions. . . .
>
> THE FOREPERSON: We thought it would be a different outcome.

> \* \* \* \* \* \*

> THE COURT: . . . The third question . . . said if you answered yes to question 2 as to any defendant, do you find that any defendant would have taken the same action, even if plaintiff had not engaged in any of the constitutionally protected speech. And you answered [ ] yes with respect to Sorrentino, Argenziano and McCabe. . . . Now, are those answers your responses to the question? . . .
>
> THE FOREPERSON: Those are the answers that—
>
> THE COURT: Okay. . . .

The court then proceeded to explain why, as a matter of law, the jury's factual findings for Questions 1 and 3 exonerated all four defendants.

After the jury withdrew from the courtroom for the second time, Munafo contended that the jury must have misread Question 3 and therefore mismarked the answer boxes in the special verdict form. Reluctantly, the trial judge consented to poll the jury a third time. The interview proceeded as follows:

> THE COURT: I just want to ask you . . . was yes your answer to question 2?
>
> JUROR NUMBER 2: 2?

> THE COURT: Or 3 rather. Was yes the answer?
>
> JUROR NUMBER 2: That was the answer that we indicated but—
>
> JUROR NUMBER 1: But we didn't understand it.
>
> THE COURT: You didn't understand it?
>
> JUROR NUMBER 1: No[,] because it would have been no the way you explained it to us. We found—you told us the law after we picked it. Now, knowing the law, no, we would have went the other way. We feel very strongly about it, your Honor.
>
> THE COURT: Well, y[ ]ou may feel very strongly that the plaintiff should prevail—
>
> JUROR NUMBER 1: Yes.
>
> THE COURT:—but if your answer was correct to the question, he can't and you can't change your answer just because you would like him to win. . . . So, the issue is not whether you misunderstood—
>
> JUROR NUMBER 1: Even if we again misunderstood, we are for the plaintiff on this. That's why we would say no to— that's my point. We are for the plaintiff to begin with. . . . I mean, we were told the law after.

> \* \* \* \* \* \*

> THE COURT: . . . You can't decide first that you want to rule for the plaintiff and then answer the questions to make that result happen. It works just in reverse.

> \* \* \* \* \* \*

> JUROR NUMBER 7: But, your Honor, we only answered that because we misinterpreted it. And now I don't feel our intent—our verdict has come forth in this court. . . . We were totally confused at [the time you polled us], your Honor. We were in a state of shock here. And

we went back and we couldn't believe what we had just heard. . . .

\* \* \* \* \* \*

THE COURT: That's because you may have wanted to reach a verdict in favor of the plaintiff. But your answer to the question, there was no ambiguity in this question. . . .

\* \* \* \* \* \*

JUROR NUMBER 1: In all honestly [sic], you know what we agreed to, that was for the plaintiff. So, we made a mistake the wrong way[,] but in our hearts, we were for the plaintiff. I know we agreed to the question not realizing—

THE COURT: Yes, not realizing that it would—but that's my point. You answered the question—

JUROR NUMBER 1: Not realizing what it meant to the stuff. . . . I didn't understand it. This went by the evidence that was here. . . . That's what we agreed to. . . .

\* \* \* \* \* \*

Juror Number 7: We made a mistake; yes, I guarantee. But we made a mistake because we don't know the law and we're not expert at the law. We're laymen. . . . But if we had answered oppositely, there would have been another verdict here?

THE COURT: Yes.

\* \* \* \* \* \*

JUROR NUMBER 7: Then maybe things should be explained . . . more before time. . . .

THE COURT: You mean explained that . . . a yes or no answer would have [a]ffected the ultimate outcome, . . . that's what I should have explained? I mean, is that what you're telling me that I should have explained?

JUROR NUMBER 7: Yes, because it seems like the verdict hung on those—because

we thought the opposite. We wanted justice done here.

THE COURT: I understand.

Following this colloquy, the judge concluded that the jury intended to answer Question 3 in the affirmative with respect to Sorrentino, Argenziano, and McCabe (as indicated on the special verdict form), but that it simply misjudged the legal effect of its factual determinations. He informed the jury that its mistake as to the legal outcome was not a reasonable ground to vacate an otherwise valid verdict, then discharged the jury and entered judgment in the defendants' favor.

Munafo filed a timely motion requesting, pursuant to Federal Rules of Civil Procedure 59(a) and 59(e), that the district court alter or amend the judgment and order a new trial on the issue of damages or, in the alternative, order a new trial on all issues. *See* FED. R. CIV. P. 59(a) ("A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ."); *id.* 59(e) (providing for "motion[s] to alter or amend a judgment"). Affixed to Munafo's motion were affidavits from Juror Number 1, Saverio Calvacca, and Juror Number 7, Victor Strammiello. In substantially identical language, the Calvacca and Strammiello affidavits assert that the special verdict form miscommunicated the jury's finding that defendants Sorrentino, Argenziano, and McCabe would not have fired Munafo had he not engaged in constitutionally protected speech. The district court concluded that these affidavits were inadmissible under Federal Rule of Evidence 606(b) and in any event were insufficient to impeach the jury's verdict. The district court therefore denied Munafo's motion to amend the ver-

dict and to order a new trial. *See Munafo v. Metro. Transp. Auth.*, 277 F.Supp.2d 163 (E.D.N.Y.2003) (*Munafo II*).

## II.

Munafo wages an uphill battle in challenging the district court's denial of his motion for an amended judgment and new trial. We have held that "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir.1998), *quoting Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir.1997). When reviewing a district court's decision to deny a motion for a new trial, we "view the evidence in the light most favorable to the nonmoving party and will reverse only if the trial court's denial of the new trial motion constitutes an abuse of discretion." *Id.* (citations omitted).

Although Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment, we agree with our sister circuits that district courts may alter or amend judgment "to correct a clear error of law or prevent manifest injustice." *Collision v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir.1994), *quoting Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993); *see also Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir.2003); *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). A district court's denial of a party's motion to alter or amend judgment under Rule 59(e) is also reviewed for an abuse of discretion. *Devlin v. Transp. Communications Int'l Union*, 175 F.3d 121, 132 (2d Cir.1999).

## III.

We first examine Munafo's argument based on inconsistencies in the jury's special verdict. In *Tolbert v. Queens Coll.*, 242 F.3d 58, 74 (2d Cir.2001), we recognized that inconsistent special verdict answers raise constitutional concerns because "proper deference to the parties' Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding." To justify setting aside an otherwise valid jury verdict, the special verdict answers must be "*ineluctably* inconsistent." *Id.* (emphasis added). In cases "where the special verdict answers appear to be inconsistent but there is a view of the case that makes the jury's answers consistent, they must be resolved that way." *Id.* (internal quotation marks, brackets, ellipsis, and citation omitted); *see also Brooks v. Brattleboro Mem'l Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992) ("In evaluating a claim that a jury's answers to special interrogatories are inconsistent, a reviewing court must adopt a view of the case, if there is one, that resolves any seeming inconsistency." (internal quotation marks and citation omitted)). Thus, the Seventh Amendment requires a new trial only where a "jury's answers cannot be harmonized rationally." *Brooks,* 958 F.2d at 529.

In this case, Munafo characterizes the special verdict as inconsistent because the jury found that his "constitutionally protected speech was [not] at least a 'substantial' or 'motivating' factor" in Filimon's decision to terminate him (Question 2), but the jury also concluded that Filimon would not have terminated him had he not engaged in the protected speech (Question 3). Logic dictates that these two findings are, indeed, "ineluctably inconsistent": if Munafo's protected speech was the proximate cause of Filimon's termination decision (Question 3), it was also necessarily a

"substantial" or "motivating" factor (Question 2). Nevertheless, this ineluctable inconsistency does not support a new trial here, because it only impeaches the verdict's accuracy with respect to Filimon, and Munafo concedes on appeal that the jury intended to exonerate Filimon.

■ Moreover, the responses pertaining to Filimon are not logically inconsistent with the jury's affirmative answers to Questions 2 and 3 as to Sorrentino, Argenziano, and McCabe. As the district court observed,

> Defendant Sorrentino, Munafo's immediate supervisor, initiated the disciplinary process and was the principle complainant against him, but did not have the authority to determine the discipline imposed or even whether discipline was warranted. The remaining defendants were hearing officers considering Munafo's appeal of Filimon's determination, but had only Filimon's unchallenged decision before them since Munafo refused to participate in his own defense on appeal. Thus, it would be entirely consistent for the jury to find ... that ... Sorrentino's improper motive was cleansed by the independent review of a supervisor untainted by discriminatory animus, and that defendants Argenziano and McCabe would have taken the same actions (essentially rubber-stamping Filimon's uncontested decision), even if Munafo had not engaged in constitutionally protected speech.

*Munafo II*, 277 F.Supp.2d at 173–74. Because the jury's answers to Questions 2 and 3 with respect to Sorrentino, Argenziano, and McCabe were not ineluctably inconsistent with the jury's responses for Filimon, they do not require a new trial against these three defendants.

■ Munafo contends that the jury's answer to Question 4 is also ineluctably inconsistent with its answer to Question 3.

Why would the jury answer Question 4 at all, Munafo asks, if it had already determined in Questions 2 and 3 that the defendants did not violate his constitutional rights? Without delving into the jury's actual motivations for answering Question 4, we perceive at least two rational explanations for the jury's response. First, the special verdict form did not instruct the jury that it could leave Question 4 unanswered if it decided Questions 2 and 3 for the defendants. Second, the jury could have miscalculated the legal consequences of its factual findings and assumed that its answers to Questions 2 and 3 would support Munafo's constitutional claims. As such, the jury could rationally find that Sorrentino, Argenziano, and McCabe would have terminated Munafo whether or not he engaged in the protected speech (Question 3), and still conclude that Munafo's failure to participate in the disciplinary proceedings was reasonable under the circumstances (Question 4). Because we can easily harmonize the jury's various answers for Sorrentino, Argenziano, and McCabe, we conclude that the district court did not abuse its discretion in rejecting Munafo's contention that facial flaws in the special verdict compel relief.

IV.

This brings us to the core issue raised on appeal: whether the district court abused its discretion in evaluating the jurors' post-trial statements and the Calvacca and Strammiello affidavits. Subject to a few narrow exceptions, Rule 606(b) of the Federal Rules of Evidence proscribes the admission of juror testimony to impeach a final verdict:

> Upon an inquiry into the validity of a verdict ..., a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon

that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict ... or concerning the juror's mental processes in connection therewith .... Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

FED. R. EVID. 606(b). As the Supreme Court has explained, Rule 606(b) prevents jurors from being "harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to" overturn a final judgment. *McDonald v. Pless*, 238 U.S. 264, 267, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). "If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference." *Id.* at 267–68, 35 S.Ct. 783; *see also United States v. Radonjich*, 1 F.3d 117, 120 (2d Cir.1993) ("[J]urors have a right to go home at the end of the trial ... secure in the belief that they will not be harassed ...." (quoting the district court's opinion)). Equally important, Rule 606(b) protects juries from themselves, cabining their power to revise special verdicts retrospectively in order to achieve a preferred result. *See* FED. R. EVID. 606(b) advisory committee's notes (observing a contrary rule would "place every [judgment] at the mercy of jurors"); *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 457 n. 2 (9th Cir.1986) (stressing that special verdicts are "designed to prevent the jury's view of the correct result from interfering with factual findings").

 Although Rule 606(b) sweeps broadly, its prohibition against juror testimony does not encompass judicial queries designed to confirm the accurate *transmittal* of a special verdict. *Attridge v. Cencorp Div. of Dover Techs. Int'l, Inc.*, 836 F.2d 113, 117 (2d Cir.1987). As we recognized in *Attridge*, "juror testimony is admissible to show that the verdict delivered was not that actually agreed upon." *Id.* at 116. For this reason, federal courts may grant an amended judgment or new trial if juror testimony reveals that "judgment [was] entered upon answers to questions which misle[d] and confuse[d] the jury." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir.1981).

 Here the district judge, properly following *Attridge*, 836 F.2d at 117, interviewed the jurors to evaluate whether "the verdict delivered was not that actually agreed upon." *Id.* at 116. Although two of the jurors claimed that the jury "misunderstood" and "misinterpreted" Question 3, further inquiry revealed that the jury most likely misjudged the legal effect of Question 3, anticipating (incorrectly) that its answers would deliver victory to Munafo. The jurors lamented their lack of legal training and expressed sympathy for the plaintiff, but they did not state at any point that the special verdict misrepresented their original consensus concerning the defendants' motives for firing Munafo (Questions 2 and 3). Considering the jurors' statements in context, the district court could reasonably surmise that the special verdict form accurately communicated the jury's original verdict. We need not decide whether this interpretation of the jurors' protestations was *correct*; under our deferential standard of review, it is enough that the district court did not abuse its discretion.

 The district court likewise did not abuse its discretion with respect to the Calvacca and Strammiello affidavits. The district court deemed the affidavits inadmissible under Rule 606(b), but also stated

that "[e]ven if Rule 606(b) did not bar their admission, these affidavits ... would be entitled to little weight and are insufficient to impeach the verdict." *Munafo II*, 277 F.Supp.2d at 176. Since it was not an abuse of discretion to hold that the affidavits fall short of impeaching the verdict, we do not decide whether the district court abused its discretion in ruling them inadmissible.

The district court offered several solid reasons for according the affidavits "little weight" in this case. First, the district court observed that the jurors had an adequate opportunity to voice their concerns during the post-trial interview, and neither Calvacca nor Strammiello gave any indication at that time that they had misread Question 3 or that the jury's answers to the special interrogatories did not accurately convey its verdict. Second, although the affidavits assert that the jury as a whole misunderstood Question 3, Calvacca and Strammiello were not competent to testify to the other jurors' alleged mistake. When individual jurors raise allegations of verdict inaccuracy, courts must proceed with "great caution" to avoid "giv[ing] to the secret thought of one the power to disturb the expressed conclusions of twelve" and thereby encourage "tampering with individual jurors subsequent to the verdict." *Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 36 L.Ed. 917 (1892) *quoting Perry v. Bailey*, 12 Kan. 539, 545 (1874); *see also Cont'l Cas. Co. v. Howard*, 775 F.2d 876, 885 (7th Cir.1985) (suggesting that post-verdict testimony should be admissible only where "*all jurors agree* that through inadvertence, oversight or mistake the verdict announced was not the verdict on which agreement had been reached" (emphasis added) (citing *Young v. United States*, 163 F.2d 187, 189 (10th Cir.1947))). Third, the district court could reasonably question the affidavits' credibility because Calvacca

and Strammiello prepared their statements with the assistance of Munafo's counsel. Such collusion between jurors and a litigant's counsel outside the courtroom undermines Rule 606(b)'s important policy values: "freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." FED. R. EVID. 606(b) advisory committee's notes. More disturbing still, the affidavits' strikingly similar wording and legalistic point-by-point refutation of the district court's conclusions suggest that Munafo's counsel—not Calvacca or Strammiello—served as the affidavits' primary draftsman.

Given its strong reasoning, the district court did not abuse its discretion by according the Calvacca and Strammiello affidavits little weight. Nor did the district court abuse its discretion by concluding overall that the sum of Munafo's testimonial evidence did not support his motion to alter or amend the judgment and order a new trial.

## V.

We need not—and, indeed, may not—speculate with the district court as to whether the jury intended to produce a "lawless verdict." *See Attridge*, 836 F.2d at 116 (explaining that Rule 606(b) precludes judicial inquiry into "the effect of anything upon ... [a] juror's mind or emotions as influencing the juror to assent to ... the verdict ... or concerning the juror's mental processes in connection therewith" (quoting Lord Mansfield)). Rather, we conclude only that the jury rendered a facially adequate verdict as to Sorrentino, Argenziano, and McCabe, and that the district court's assessment of the jurors' testimonial evidence, including the two jurors' affidavits, was not an abuse of discretion. Because the district judge did not abuse

his discretion, we affirm the district court's order denying Munafo's motion for an altered or amended judgment and a new trial.